*Krasner v. Cedar Realty Trust, Inc.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2023

(Argued: October 6, 2023      Decided: November 14, 2023)

No. 23-1262

_____

JONATHAN KRASNER,

*Plaintiff-Appellee,*

-v.-

CEDAR REALTY TRUST, INC., BRUCE J. SCHANZER, GREGG A. GONSALVES, ABRAHAM EISENSTAT, STEVEN G. ROGERS, SABRINA L. KANNER, DARCY D. MORRIS, RICHARD H. ROSS, SHARON STERN, AND WHEELER REAL ESTATE INVESTMENT TRUST, INC.

*Defendants-Appellants*

_____

Before:      LIVINGSTON, *Chief Judge*, ROBINSON, and KAHN, *Circuit Judges*.

Plaintiff-Appellee, Jonathan Krasner, filed a putative shareholder class action complaint in New York State Supreme Court, alleging Maryland state law claims on behalf of himself and all similarly situated preferred stockholders of Cedar Realty Trust, Inc. ("Cedar"), a New York-based corporation incorporated in Maryland, following its August 2022 merger with Wheeler Real Estate Investment Trusts, Inc. ("Wheeler") (collectively, "Defendants"). The complaint alleges Cedar and its leadership breached fiduciary duties owed to, and a contract with,

1

shareholders such as Krasner, and that Wheeler both aided and abetted the breach and tortiously interfered with the relevant contract. The Defendants collectively removed the case, invoking federal jurisdiction under the Class Action Fairness Act (CAFA), but the United States District Court for the Eastern District of New York (Irizarry, *J.*) remanded the case to state court after Krasner argued that an exception to CAFA jurisdiction applied to his claims. Following an appeal by the Defendants, we conclude that the "securities-related" exception applies. *See* 28 U.S.C. §§ 1322(d)(9)(C), 1453(d)(3). Accordingly, the appeal is **DISMISSED** for lack of federal jurisdiction.

FOR PLAINTIFF-APPELLEE:                MILES D. SCHREINER, Monteverde & Associates, PC, New York, NY, *on behalf of* Plaintiff-Appellee Jonathan Krasner.

FOR DEFENDANTS-APPELLANTS:       JERROLD A. THROPE, Gordon Feinblatt LLC, Baltimore, MD (Kathryn C. Cole, Greenberg Traurig LLP, Garden City, NY, *on the brief*), *on behalf of* Defendants-Appellants Cedar Realty Trust, Inc. and Wheeler Real Estate Investment Trust, Inc.

Douglas H. Flaum, Jennifer Burns Luz, Goodwin Procter LLP, New York, NY and Boston, MA, *on behalf of* Defendants-Appellants Bruce J. Schanzer, Gregg A. Gonsalves, Abraham Eisenstat, Steven G. Rogers, Sabrina L. Kanner, Darcy D. Morris, Richard H. Ross, and Sharon Stern.

DEBRA ANN LIVINGSTON, *Chief Judge*:

In this appeal from an order of the United States District Court for the Eastern District of New York (Irizarry, *J.*), remanding this putative class action to New York State Supreme Court, we again consider the securities-related exception

2

to the federal jurisdiction conferred by the Class Action Fairness Act of 2005 ("CAFA"). In particular, we consider whether this exception excludes from federal jurisdiction a shareholder class action that asserts: (1) breach of contract and fiduciary duty claims against insider defendants, which relate to the shareholders' securities; and (2) aiding and abetting and tortious interference claims against outsider defendants, which are contingent on the claims against the insiders.

We conclude that CAFA's securities-related exception, set forth at 28 U.S.C. §§ 1322(d)(9)(C) and 1453(d)(3), applies in this context.[1] Specifically, we hold that this exception applies to the claim that an outsider aided and abetted an insider's purported breach of fiduciary duty arising from a security and owed to shareholders. The exception likewise applies to the claim that an outsider tortiously interfered with a contract between a shareholder and a company where

---

[1] As relevant here, the securities-related exception to CAFA's grant of original diversity jurisdiction applies to any class action that solely involves a claim:

> (C) that relates to rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. § 77b(a)(1)) and the regulations issued thereunder).

28 U.S.C. § 1332(d)(9). Identical language in § 1453(d) of Title 28 makes clear that appellate courts lack jurisdiction to review orders remanding class actions to state courts where the exception applies.

3

such contract sets out shareholder rights with respect to a security. In both instances, the claims against the outsider plainly "relate[] to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to" a security, 28 U.S.C. § 1322(d)(9)(C), because they necessarily depend on proving breaches of duties and obligations created by the security. That dependence makes the claims "relate[d]." *Id.* Accordingly, we do not have jurisdiction to hear this appeal and must dismiss it.

## BACKGROUND

Plaintiff-Appellee, Jonathan Krasner ("Krasner"), filed a putative shareholder class action complaint on October 14, 2022, in New York State Supreme Court, alleging Maryland state law claims on behalf of himself and all similarly situated preferred stockholders of Cedar Realty Trust, Inc. ("Cedar"), a New York-based corporation incorporated in Maryland. According to Krasner, a reverse cash-out merger between Cedar and Wheeler Real Estate Investment Trust, Inc. ("Wheeler") in August 2022 deprived stockholders like him of a liquidation preference and/or conversion rights guaranteed by the Articles Supplementary, a contract between Cedar and its preferred stockholders under

4

Maryland law that defines the rights of these stockholders in connection with their securities.

Krasner's four-count complaint alleges that Cedar, Cedar's CEO Bruce Schanzer, and the Cedar Board of Directors (the "Board") breached (1) a contract with, and (2) fiduciary duties owed to, Krasner and other holders of Cedar preferred stock when Cedar entered the deal. The complaint also alleges that, in acquiring Cedar, Wheeler (3) tortiously interfered with the preferred stockholders' contractual rights and (4) aided and abetted the Board's breach of its fiduciary duties. Notably, the two counts against Wheeler depend on the success of the two against Cedar: Under Maryland law, breach of contract is an element of the tortious interference claim, *see Fowler v. Printers II, Inc.*, 598 A.2d 794, 802 (Md. Ct. Spec. App. 1991) (explaining the elements of Maryland's tortious interference law), and breach of fiduciary duty is an element of the aiding and abetting claim, *see Sutton v. FedFirst Fin. Corp.*, 126 A.3d 765, 792 (Md. Ct. Spec. App. 2015) (explaining the elements of Maryland's aiding and abetting law).

Thirty days after Krasner filed suit, the Defendants removed the case to the Eastern District of New York pursuant to CAFA. *See* 28 U.S.C. § 1332(d)(2). Krasner moved to remand, arguing that at least one of CAFA's three jurisdictional

5

exceptions, as set forth in 28 U.S.C. § 1332(d)(9), precluded federal jurisdiction. Judge Irizarry granted the remand motion, deciding *sua sponte* that CAFA's numerosity requirement, 28 U.S.C. § 1332(d)(5)(B), was not satisfied and suggesting, in passing, that Plaintiffs' claims "appear[ed] to fall within" the CAFA exceptions. *Krasner v. Cedar Realty Trust, Inc.*, No. 22-cv-06945, 2023 WL 3057387, at *3 (E.D.N.Y. Apr. 24, 2023). Defendants petitioned for leave to appeal, which this Court granted.

We conclude that we lack appellate jurisdiction over this case because it "solely involves . . . a claim that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security." 28 U.S.C. § 1453(d)(3). For the same reason, the district court was correct to remand the case.[2] *See* 28 U.S.C. § 1332(d)(9)(C).

**I**

"It is axiomatic that federal courts are courts of limited jurisdiction." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). Within the bounds of Article III, however, Congress has the authority to shape that

---

[2] Because we lack jurisdiction under the securities-related exception, we need not address the district court's determination that the complaint does not satisfy CAFA's numerosity requirement.

6

jurisdiction—an authority it exercised by passing CAFA in 2005. *See* CAFA, Pub. L. No. 109-2, 119 Stat. 4 (2005). The legislation's stated purpose is threefold: (1) "assure fair and prompt recoveries for class members with legitimate claims," (2) "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction," and (3) "benefit society by encouraging innovation and lowering consumer prices." *Id.* at 119 Stat. 5.

CAFA expanded federal jurisdiction to permit a defendant to remove a class action or mass action to federal court, notwithstanding the absence of the complete diversity or federal question typically required for removal. The statute grants federal courts jurisdiction over only those class actions involving 100 or more class members, an aggregate amount in controversy greater than $5,000,000, and minimal diversity, *i.e.*, where at least one plaintiff and one defendant are citizens of different states. *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(5); *see also Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006) (explaining how CAFA operates).

Such removal is subject to the general remand statute, 28 U.S.C. § 1447, which authorizes district courts to remand those cases that do not meet CAFA's threshold requirements. *See* 28 U.S.C. § 1453(c)(1). Typically, "an order

7

remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d). But CAFA also expanded appellate jurisdiction, allowing courts of appeal to accept interlocutory appeals from orders on motions to remand cases that were removed under the statute. *See* 28 U.S.C. § 1453(c).

In broadening federal courts' authority to hear class actions, CAFA simultaneously carved out exceptions to that authority. Where these exceptions apply, removal to federal court is not proper, and the district court must remand the proceedings to the state jurisdiction from whence they came due to lack of jurisdiction. *See, e.g.,* 28 U.S.C. §§ 1332(d)(4)(A), (B), and (5)(A). Here, Krasner argues that each of three exceptions involving securities and corporate governance apply. *See* 28 U.S.C. § 1332(d)(9)(A), (B), and (C). These carve-outs to federal jurisdiction under CAFA are respectively known as the "covered security" exception, the "internal affairs" exception, and the "securities-related" exception. They appear twice in the U.S. Code, once as exceptions to our appellate jurisdiction, *see* 28 U.S.C. § 1453(d), and once as exceptions to the district courts' original jurisdiction, *see* 28 U.S.C. § 1332(d)(9). "These provisions work in tandem and are given the same meaning," so that if we lack appellate jurisdiction

8

under any of the corporate exceptions, "the district court likewise lack[s] original jurisdiction." *BlackRock Fin. Mgmt. Inc. v. Segregated Acct. of Ambac Assurance Corp.*, 673 F.3d 169, 176 (2d Cir. 2012) (citing *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 27 (2d Cir. 2010)).

For the reasons set forth herein, we conclude that the securities-related exception is applicable in this case, depriving us of jurisdiction over this appeal and, at the same time, requiring remand for lack of original jurisdiction to the New York courts. Because we conclude that the securities-related exception set forth at 28 U.S.C. §§ 1332(d)(9)(C) and 1453(d) is applicable, we need not and do not opine on the reach of the other exceptions.

**II**

We do not evaluate the scope of CAFA's securities-related exception in a vacuum. Guiding our understanding of its meaning is a trilogy of cases this Court decided more than a decade ago. *See Estate of Pew v. Cardarelli*, 527 F.3d 25 (2d Cir. 2008); *Greenwich*, 603 F.3d 23; *BlackRock*, 673 F.3d 169. In each case, we explored and outlined the contours of 28 U.S.C. § 1332(d)(9)(C), the securities-related exception that excludes from federal jurisdiction any class action "that solely involves a claim . . . that relates to the rights, duties (including fiduciary

9

duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and the regulations issued thereunder)."

This Court first grappled with the securities-related exception in *Cardarelli*. *See* 527 F.3d at 25. A proposed class of plaintiffs had sued the issuer of debt certificates under a New York consumer fraud statute, alleging the issuer had failed to disclose that it was insolvent when it sold them the certificates. *Id.* The majority held that the suit did not fall within the securities-related exception because the exception only covers claims "grounded in the terms of the security itself." *Id.* at 31–32. In reaching this result, the *Cardarelli* court recognized that "certain duties and obligations of course 'relate to' securities even though they are not rooted in a corporate document but are instead superimposed by a state's corporation law or common law on the relationships underlying that document." *Id.* at 31. However, because the state-law consumer fraud action at issue "d[id] not enforce the rights of the [plaintiff] Certificate *holders as holders*," but instead enforced their rights as purchasers, the claim did "not fall within [the securities-related exception]." *Id.* at 32 (emphasis added).

Next, in *Greenwich*, we addressed a scenario in which the plaintiffs *did* "seek enforcement of their rights as holders rather than as purchasers of securities." 603 F.3d at 29. That case concerned the fallout from the 2008 financial crisis. Countrywide Financial Corporation ("Countrywide"), the primary defendant in the dispute, had raised money to lend to consumers by selling mortgages it owned to specially-created trusts. *Id.* at 25. The trusts received payments from the mortgage borrowers and, in turn, sold to investors certificates that legally entitled them to repayment of the mortgage principal plus interest. *Id.* When Countrywide entered into a multistate agreement to settle predatory lending claims, it agreed to modify the terms of the mortgages, "creat[ing] the possibility that the homeowners would make smaller payments of interest and principal to the trusts, thereby decreasing the value of the certificates." *Id.* In response, the certificate-holders filed a putative class action, seeking declaratory judgments that Countrywide was required, under the terms of its agreements with the trusts, to repurchase the modified loans. *Id.*

We concluded that the securities-related exception applied to the holders' claims because "[p]laintiffs' asserted right to force Countrywide Servicing to repurchase the loans arises from the deal instruments themselves, not from an

11

extrinsic provision of state law, such as the consumer fraud statute that formed the basis of the action in *Cardarelli*." *Greenwich*, 603 F.3d at 29. Countrywide had argued that the securities-related exception could not apply to the holders' claims because the holders were not party to the agreements between the company's subsidiaries and the trusts that had sold them securities. In rejecting that premise, we held that "the fact that the certificate holders are not themselves parties to the [agreements] is not relevant. The focus of the inquiry is on the source of the right that the plaintiff's claim seeks to enforce." *Id.* We also explained that collateral legal issues raised by the suit did not preclude the exception's application. Given the "expansive language of the exception[]," we determined that "the phrase 'solely involves' cannot be stretched so far as to limit [the securities-related exception] to class actions that raise no collateral issues and for which there are no affirmative defenses." *Id.* at 31. Instead, we said the phrase "solely involves" "ensures that federal jurisdiction under CAFA cannot be defeated by adding a claim that falls within a § 1332(d)(9) exception to a class action complaint advancing one or more other claims." *Id.* at 32.

Two years after *Greenwich*, we addressed the meaning of the securities-related exception for a third time. *See Blackrock*, 673 F.3d at 169. The case

involved the same type of mortgage pool trust and certificate scheme that the

*Greenwich* court had examined, but this time the plaintiff was a trustee, not a

securities holder. Specifically, the Bank of New York Mellon ("BNY"), in its

capacity as trustee for 530 residential mortgage-backed securities trusts, had

negotiated an $8.5 billion settlement to resolve claims that Countrywide breached

representations and warranties about the credit quality and property values of its

mortgages. *Id.* at 173. The terms of the settlement mandated court approval of

the trust, so BNY filed a petition in New York state court seeking the necessary

declaratory judgment. *Id.* at 174. Some certificate-holders intervened, seeking

to exclude from the settlement the trusts in which they had invested by removing

the entire proceeding under the "mass action" application of CAFA. *Id.* at 175.

The district court denied the BNY's subsequent motion to remand, reasoning that

the securities-related exception did not apply where the trustee's conduct in

approving the settlement was to be evaluated pursuant not only to the agreement

underlying the securities, but some other source of law "such as New York's

common law of trusts." *Id.* at 179 (internal quotation marks omitted).

We rejected the district court's reading and held that "duties superimposed

by state law as a result of the relationship created by or underlying the security

13

fall within the plain meaning of the statute, which expressly references 'duties (including fiduciary duties).'" *Id.* (referring to the securities-related exception). As support, we cited both *Cardarelli* and an opinion from the District of New Jersey, *Rubin v. Mercer Ins. Grp., Inc.*, No. 10-cv-6816 (MLC), 2011 WL 677466 (D.N.J. Feb. 15, 2011). *Id.* Notably, the New Jersey opinion addressed aiding and abetting breach of fiduciary claims like those before us now. *See Rubin*, 2011 WL 677466 at *4 ("The Complaint 'relates to' the rights, duties, and obligations created by virtue of Plaintiff's ownership of [securities], in that both claims asserted pertain to the alleged breach of fiduciary duty: the alleged breach of duty by the Individual Defendants, and the coordinate claim against Removing Defendants for aiding and abetting the same.").

The *Cardarelli* trilogy establishes several principles relevant to this case. First, the securities-related exception applies where plaintiffs, in their capacity as security-holders, bring claims that are "grounded in the terms of the security itself." *See Cardarelli*, 527 F.3d at 31–32. Second, whether a party in the litigation was a party to the contracts underlying the securities is "not relevant" because Congress focused the exception on "the source of the right that the plaintiff's claim seeks to enforce," not the identity of the parties. *Greenwich*, 603 F.3d at 29.

14

Third, "duties superimposed by state law as a result of the relationship created by or underlying the security fall within the plain meaning of the statute." *BlackRock*, 673 F.3d at 179.

With these lessons in mind, we turn to the present matter.

## III

"We review *de novo* a district court's subject matter jurisdiction determination." *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 142 (2d Cir. 2014). Likewise, "[w]e review questions of statutory interpretation *de novo*," *L.S. v. Webloyalty.com, Inc.*, 954 F.3d 110, 114 (2d Cir. 2020) (internal quotation marks and citation omitted), keeping in mind that "[b]ecause 'statutory procedures for removal are to be strictly construed,' we 'resolv[e] any doubts against removability.'" *Taylor v. Medtronic, Inc.*, 15 F.4th 148, 150–51 (2d Cir. 2021) (quoting *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007)). As ever, we have jurisdiction to determine our own jurisdiction. *See Kuhali v. Reno*, 266 F.3d 93, 100 (2d Cir. 2001).

To decide whether CAFA's securities-related exception excludes Krasner's claims from federal jurisdiction, we start with the statute's text. "A fundamental canon of statutory construction is that, unless otherwise defined, words will be

15

interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). "When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law[.]" *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1737 (2020).

And yet, some terms are admittedly indeterminate—for example, "relates to," the term at the crux of this case. If 'relate to' "'were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes' there would be no limits, as '[r]eally, universally, relations stop nowhere.'" *Dubin v. United States*, 599 U.S. 110, 119 (2023) (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)). The Supreme Court has repeatedly declared that "[t]his language thus cannot be 'considered in isolation,' and the Court must 'go beyond the unhelpful text and the frustrating difficulty of defining [this] key term' and look to statutory context." *Id.* (first quoting *Maracich v. Spears*, 570 U.S. 48, 59 (2013); then quoting *Travelers*, 514 U.S. at 656). No doubt "the phrase refers to a relationship or nexus of some kind," but "the kind of relationship required, its nature and strength, will be informed by context." *Id.*

16

The context of "relates to" as it appears in the securities-related exception illuminates why the exception applies to the aiding and abetting and tortious interference claims that Krasner brings against Wheeler. First, exceptions to CAFA's expansion of federal jurisdiction, such as 28 U.S.C. § 1332(d)(9)(C), generally promote the adjudication of state-specific issues in state courts. *See, e.g.*, 28 U.S.C. § 1332(d)(4)(A) (excepting from federal jurisdiction class actions where most plaintiffs and at least one key defendant are citizens of the state where the action was initially filed if that state is also where principal alleged injuries were incurred); 28 U.S.C. § 1332(d)(4)(B) (excepting claims where two-thirds or more of the plaintiffs, and the primary defendants, are citizens of the state where the action was initially filed); 28 U.S.C. § 1332(d)(9)(B) (excepting claims that relate to a corporation's internal affairs and arise under the laws of the state where the corporation is incorporated). Second, the securities-related exception is located within a trio of exceptions that all concern corporate laws and relationships. *See* 28 U.S.C. § 1332(d)(9)(A)–(C). Taken together, these context clues demonstrate that the purpose of the exception, in keeping with CAFA's "overall design," is "to assure that the federal courts are available for all securities cases that have national impact . . . without impairing the ability of state courts to decide cases of chiefly

17

local import or that concern traditional state regulation of the state's corporate creatures[.]"    *Cardarelli*, 527 F.3d at 32.

The question here is whether a claim that requires proving a breach of fiduciary duty (*i.e.*, the aiding and abetting claim) and a claim that requires proving a breach of a contractual obligation (*i.e.*, the tortious interference claim) "relate[] to" state-law fiduciary duties and contract obligations "created by" Krasner's securities.    28 U.S.C. § 1332(d)(9)(C).    Given the context of the statute's design, the answer must be yes.    The claim that Wheeler aided and abetted a breach of fiduciary duty by the Cedar Board necessarily depends on proving a breach of fiduciary duty grounded in Krasner's securities and the Articles Supplementary, the agreement defining the rights of the preferred stockholders. Similarly, the claim of tortious interference necessarily depends on proving a breach of the Articles Supplementary.    To argue that such claims do not "relate[] to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to" a security strains credulity. [3]    Where proving a

---

[3] Judge Motz aptly articulated this point in her dissenting opinion in *Dominion Energy, Inc. v. City of Warren Police and Fire Ret. Sys.*, 928 F.3d 325, 344 (4th Cir. 2019).    For the abovementioned reasons, we agree with her reading of our own case law and the statutory text, and we respectfully disagree with the *Dominion Energy* court's majority opinion.

concededly excepted claim (such as breach of fiduciary duty) is an element of another claim (such as aiding and abetting said breach), a relation plainly exists.

To be sure, we must beware adopting a reading of the covered securities exception that risks sweeping in "any and all claims that relate to any security." *Cardarelli*, 527 F.3d at 31. But our interpretation does no such thing. The aiding and abetting claim here arises under state fiduciary duty law as it concerns rights and obligations in connection with Krasner's securities, and it depends on proof of Cedar's direct breach of fiduciary duty. So, too, for the tortious interference claim stemming from the insiders' alleged breach of the Articles Supplementary. This case is wholly unlike *Cardarelli*, where the claims at issue were not in any way grounded in the terms of the relevant securities, but rather in a state's law of consumer fraud. Our holding today thus reflects an understanding of the phrase "relates to" that is neither so broad as to negate CAFA's purpose nor so narrow as to atextually read the phrase out of the statute.[4]

---

[4] We recognize that the *Cardarelli* majority suggested that the exception's reference to "relating to" (as in rights, duties, and obligations "relating to or created by or pursuant to" a security) is "repetitive and lack[s] any predictable or precise effect." 527 F.3d at 32. Our holding today does not rely on that use of the term, but instead construes the meaning of "relates to" as it appears in the phrase, "a claim that relates to the rights, duties (including fiduciary duties), and obligations" associated with a security. This phrase has proved instructive in delineating the scope of the exception. *See Blackrock*,

The fact that the aiding and abetting and tortious interference claims are brought against a non-party to the underlying security and its associated agreement is irrelevant. Congress included no language conditioning the exception's applicability on the identity of the defendants to the claim. Rather, it framed the exception around whether the claim "relates to" rights, duties, and obligations "relating to or created by or pursuant to any security." 28 U.S.C. § 1332(d)(9)(C). Thus, as we have previously stated, "[t]he focus of the inquiry is on the source of the right that the plaintiff's claim seeks to enforce." *Greenwich*, 603 F.3d at 29. And here, shareholders may only claim that a party aided and abetted a breach of fiduciary duty or tortiously interfered with a contract if they can show that their securities gave rise to the relevant fiduciary or contractual duty in the first place—in other words, that the source of the obligations that were breached was grounded in a security.

---

673 F.3d at 179 (explaining that "certain duties and obligations of course 'relate to' securities"); *Greenwich*, 603 F.3d at 31 (noting Congress's decision to "use the [] broad phrase 'relates to.'"). Because the aiding and abetting claim "relates to" the fiduciary duties "created by" the securities in question, and the tortious interference claim "relates to" the obligations "created by" the same securities, both claims fit within the plain meaning of the statute—regardless of how one construes the provision's second reference to the words "relating to."

Defendants argue, finally, that the claims against Wheeler were created by state common law and thus do not arise out of the terms of the securities. We again disagree. The terms of the Articles Supplementary, which govern the preferred shares at issue, do not contain the words "fiduciary duty," yet Defendants do not dispute that Krasner's breach of fiduciary duty claim, standing alone, would fall within the securities-related exception. This is because "duties superimposed by state law as a result of the relationship created by or underlying the security fall within the plain meaning of the statute." *BlackRock*, 673 F.3d at 179. In other words, "securities are created and defined not simply by their own text." *Greenwich*, 603 F.3d at 29. Here, the securities created a relationship between Cedar and Krasner that gave rise to fiduciary duties on the part of Cedar and the potential for additional claims against those parties who aid and abet Cedar's breach of those duties. Thus, the aiding and abetting claim—and by the same logic, the tortious interference with contract claim—"seek[] enforcement of a right that arises from an appropriate instrument." *Id.*

## CONCLUSION

In sum, the securities-related exception applies, and the district court properly remanded the case to state court. We, therefore, lack jurisdiction to hear

21

this appeal because it "solely involves a claim . . . that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to" a security, as the exception defines that term.    28 U.S.C. § 1453(d)(3). Accordingly, we **DISMISS** the appeal.