10-1975-cv
Briscoe v. City of New Haven

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2010

(Argued: April 8, 2011      Decided: August 15, 2011)

Docket No. 10-1975-cv

- - - - - - - - - - - - - - - - - - - - -x

MICHAEL BRISCOE,

                    Plaintiff-Appellant,

          - v.-

CITY OF NEW HAVEN,

                    Defendant-Appellee.

- - - - - - - - - - - - - - - - - - - - -x


     Before:          JACOBS, Chief Judge, WINTER and CABRANES,
                      Circuit Judges.

     This appeal raises a disparate-impact issue that was expressly anticipated in Ricci v. DeStefano, 129 S. Ct. 2658 (2009), and which has arisen in the aftermath of that case. Michael Briscoe, an African-American firefighter for the City of New Haven, alleges that the firefighter promotion exams challenged in Ricci (whose results the Supreme Court ordered to be certified) were arbitrarily weighted, yielding an impermissible disparate impact. The United States

District Court for the District of Connecticut (Haight, J.) dismissed the claim as "necessarily foreclosed" by Ricci.

We vacate the judgment of the district court and remand for further proceedings, but express no view as to whether dismissal is warranted based on other defenses raised by the city below.

DAVID N. ROSEN, David Rosen & Associates, P.C., New Haven, CT, for Plaintiff-Appellant.

VICTOR A. BOLDEN (Richard A. Roberts and Stacey L. Pitcher, Nuzzo & Roberts, L.L.C., Cheshire, CT, Lawrence D. Rosenberg, Jones Day, Washington, DC, and Kathleen M. Foster, Office of Corporation Counsel, City of New Haven, CT, on the brief), Office of Corporation Counsel, New Haven, CT, for Defendant-Appellee.

Karen Lee Torre, Law Offices of Norman A. Pattis, LLC, Bethany, CT, for Amicus Curiae Frank Ricci et al.

DENNIS JACOBS, Chief Judge:

This appeal raises a disparate-impact issue that was expressly anticipated in Ricci v. DeStefano, 129 S. Ct. 2658 (2009), and which has arisen in the aftermath of that case.

The City of New Haven and the New Haven Civil Service Board ("CSB"), which administer the city's firefighter promotion exams, had been concerned that white candidates

had outperformed minority candidates on the 2003 exams. The city feared that certifying the results would trigger disparate-impact liability under Title VII. After several tense public hearings concerning certification, the CSB ultimately discarded the results.

In Ricci, eighteen firefighters (seventeen white and one Hispanic) alleged that the CSB's refusal to certify the results constituted disparate treatment under Title VII. 129 S. Ct. at 2671. The Supreme Court agreed, notwithstanding the city's countervailing concern about disparate-impact liability. Such concern, the Court held, can excuse an otherwise impermissible action only if supported by a "strong basis in evidence" that the employer would have faced disparate-impact liability had it acted otherwise. Id. at 2677.

Unusually, the Court reversed the challenged judgment rather than vacating it, which prevented the city from adducing evidence to satisfy the newly imposed "strong basis" standard. Instead, the city was ordered to certify the results. Id. at 2677, 2681. Presciently, the Court anticipated a challenge to the city's compliance with the order:

3

> Our holding today clarifies how Title VII applies to resolve competing expectations under the disparate-treatment and disparate-impact provisions. If, after it certifies the test results, the City faces a disparate-impact suit, then in light of our holding today it should be clear that the City would avoid disparate-impact liability based on the strong basis in evidence that, had it not certified the results, it would have been subject to disparate-treatment liability.

Id. at 2681.

Briscoe brings the anticipated lawsuit, alleging that the weighting of the written and oral sections of the test--60% and 40%, respectively, as dictated by the collective bargaining agreement between the city and the firefighters' union, id. at 2679--was arbitrary and unrelated to job requirements. He asserts that the industry norm for such weighting was 30% written/70% oral; under that scoring, he was promotable. He seeks primarily (1) to enjoin the city from using the 60/40 weighting, and (2) eligibility for promotion to lieutenant (with retroactive pay and seniority), without displacing any of the Ricci plaintiffs who were promoted.

The city argued in the district court that "the Supreme Court's decision in Ricci precludes the plaintiff's Title VII claim." Def.'s Mot. to Dis. at 7. The court apparently

4

agreed, granting the city's motion to dismiss on preclusion grounds:

> What the Court held in Ricci and what it said in doing so squarely forecloses Briscoe's claims. The Supreme Court remanded [Ricci] with directions that the 2003 exam results be certified. That has been done and promotions have been made accordingly. Briscoe cannot now raise a disparate impact claim with respect to those same exam results.

Briscoe v. City of New Haven, No. 09-cv-1642, 2010 U.S. Dist. LEXIS 69018, at *27 (D. Conn. July 12, 2010). The court acknowledged that its ruling may deny Briscoe his day in court, but felt obliged to effect its interpretation of the Supreme Court's mandate:

> If, as he contends, Briscoe is denied his day in court or is bound by a decision in a case to which he was not a party, it is because the Supreme Court decided as much, and this court is bound by the decisions of the high court.

Id. at *22. Had Briscoe wished to protect his rights, the court reasoned, he should have timely intervened in Ricci.[1] Id. at *25.

---

[1] Briscoe moved to intervene in Ricci, but only after the Supreme Court's remand. By that time it was too late to adduce evidence or champion the 60/40 weighting issue. (He sought to intervene merely to "forestall any argument by the City that the resolution of his underlying claim should be dictated by the choice to file a separate suit rather than moving to intervene." Joint Appendix at 194 (internal quotation marks omitted).) The motion was denied.

5

Curiously, the city now rejects the preclusion theory it argued in the district court. Appellee Br. at 23 ("The only one raising claim preclusion is [Briscoe]. The Amended Complaint was dismissed not because it was legally precluded,[2] but because disparate treatment liability was already found." (footnote added)). It argues instead that Ricci's "strong basis in evidence" test for a disparate-*treatment* claim applies equally to a disparate-*impact* claim.[3] Id. at 12. Based on that premise, the city argues that it had a strong basis in evidence that it was facing disparate-treatment liability. Id. at 14. The evidence cited by the city is the Ricci decision itself, id. at 11, in which the Court concluded that failing to certify the exam results constituted disparate-treatment under Title VII.

---

[2] The city thus disputes that the district court opinion rested on preclusion grounds, but fails to discuss the passages that clearly implicate preclusion principles.

[3] Ricci held that "before an employer can engage in intentional discrimination . . . [it] must have a strong basis in evidence to believe it will be subject to disparate-impact liability if it fails to take the race-conscious, discriminatory action." 129 S. Ct. at 2677.

The city's argument is thus that an employer can engage in conduct yielding a disparate impact if it has a strong basis in evidence to believe it will be subject to disparate-treatment liability if it acts otherwise.

We review de novo the district court's dismissal of an action under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009). We consider the preclusion and two-way Ricci arguments in turn.

I

The district court ascribed preclusive effect to the sentence in Ricci that predicted a Briscoe-type claim, even though the wording did not expressly invoke preclusion. The district court's theory is inconsistent with well-settled principles of nonparty preclusion.

A

The general principle in Anglo-American jurisprudence is "that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." Hansberry v. Lee, 311 U.S. 32, 40 (1940). The law therefore avoids "impos[ing] upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger." Chase Nat'l Bank v. Norwalk, 291

7

U.S. 431, 441 (1934).

"Though hardly in doubt, th[is] rule against nonparty preclusion is subject to exceptions."  Taylor v. Sturgell, 553 U.S. 880, 893 (2008).  Taylor enumerated the six recognized categories of nonparty preclusion, id. at 893-95, but rejected in that case an exception for instances of "virtual representation."[4]  We therefore consult these six categories: "The preclusive effects of a judgment in a federal-question case decided by a federal court should . . . be determined according to the established grounds for nonparty preclusion described in [Taylor]."  Id. at 904.  The city does not cite Taylor, and does not argue that this case fits any of the recognized exceptions.  In any event, it does not:

First, Briscoe did not agree to be bound by the determination of the issues in Ricci.  Second, no pre-existing "substantive legal relationship" existed between the city and Briscoe that is akin to a "bailee and bailor"

---

[4] Two friends brought separate Freedom of Information Act suits seeking certain documents from the Federal Aviation Administration.  The first suit was unsuccessful.  The second suit was dismissed on the ground that the plaintiff's friend (who brought the first suit) qualified as his "virtual representative," despite the lack of evidence that the plaintiff "controlled, financed, participated in, or even had notice of [the] earlier suit."  Id. at 885.

or "assignee and assignor."  Third, Briscoe was not adequately represented by the city in Ricci, because their interests are widely divergent.  Fourth, Briscoe did not "assume[] control" over the Ricci litigation, or have the "opportunity to present proofs and argument."  Fifth, Briscoe is not avoiding preclusive force by relitigating through a proxy.  Sixth, no special statutory scheme such as bankruptcy or probate is present.  (Even if Title VII is considered a special statutory scheme, the city has not complied with the statute's preclusion provision, as discussed below).  See Taylor, 553 U.S. at 893-95.

**B**

The unavailability of nonparty preclusion is a recurring problem in Title VII litigation.  In Martin v. Wilks, 490 U.S. 755 (1989), a group of white firefighters challenged the City of Birmingham's acquiescence to a series of consent decrees that settled a Title VII lawsuit, brought by the NAACP and several black firefighters, alleging racially discriminatory hiring practices.  Id. at 758-59.  The consent decrees "set forth an extensive remedial scheme," including annual and long-term goals for hiring

black firefighters.  Id. at 759.  When the city altered its hiring practices accordingly, the plaintiffs in Martin alleged that the city's compliance with the decrees amounted to discriminatory treatment under Title VII, id. at 759-60; the city argued that the suit was an "impermissible collateral attack[]" on the decrees.  Id. at 760.

Underscoring the "deep-rooted historic tradition that everyone should have his own day in court," the Supreme Court held that the consent decrees were not preclusive because the plaintiffs were not parties to the original action.  Id. at 762, 768 (internal citations and quotation marks omitted).  Rejecting the city's argument that the white firefighters should have protected their rights by intervening in the original suit, the Court ruled that "a party seeking a judgment binding on another cannot obligate that person to intervene; he must be joined."  Id. at 763. The Court placed the burden on the parties of a lawsuit--who "presumably know better than anyone else the nature and scope of relief sought in the action, and at whose expense such relief might be granted"--to bring in additional parties when necessary.  Id. at 765.

The Martin Court thus upheld "the general rule that a

10

person cannot be deprived of his legal rights in a proceeding to which he is not a party."  Id. at 759.

C

In evident recognition that Martin hindered the finality of Title VII dispositions, Congress created a way by which litigants can bind certain nonparties who would otherwise stay on the sidelines.  See 42 U.S.C. § 2000e-2(n)(1).  Under § 2000e-2(n), an employment practice that "implements and is within the scope of a [Title VII] litigated or consent judgment or order" may not be challenged by a person who had actual notice of the proposed judgment or order and a "reasonable opportunity" to "present objections to such judgment or order by a future date certain."  See § 2000e-2(n)(1)(A), (B)(i).[5]  "The intent of [§ 2000e-2(n)] is to protect valid decrees from subsequent attack by individuals who were fully apprised of their interest in litigation and given an opportunity to participate, but who declined that opportunity."  137 Cong.

---

[5] Section 2000e-2(n)(1)(B)(i)(II) also enables preclusion of "a person whose interests were adequately represented by another person" who challenged the judgment. The city does not contend that it adequately represented Briscoe's interests.

11

Rec. 29,039 (1991).

It cannot be said that Briscoe had a "reasonable opportunity" to present objections to the <u>Ricci</u> judgment, within the meaning of § 2000e-2(n). The requirement for an opportunity to present objections by "a future date certain" suggests a formal process. Compliance is therefore usually, if not always, secured through notice and a fairness hearing. <u>See, e.g.</u>, <u>Brennan v. N.Y. City Bd. of Educ.</u>, 260 F.3d 123, 127 (2d Cir. 2001) ("The parties moved the district court to hold a fairness hearing at which objections to the Agreement would be heard." (citing § 2000e-2(n))); <u>Sims v. Montgomery Cnty. Comm'n</u>, 9 F. Supp. 2d 1281, 1286 (M.D. Ala. 1998) ("[T]he notice and fairness hearing were sufficient under the Civil Rights Act of 1991." (citing § 2000e-2(n)(1))). But there was no pre-judgment fairness hearing in <u>Ricci</u>: The defendants were awarded summary judgment by the district court, and the case was not revived until the Supreme Court mandated entry of judgment in favor of the <u>Ricci</u> plaintiffs.

In any event, the city has abandoned the argument it made below that the <u>Ricci</u> proceedings satisfied § 2000e-2(n). <u>See</u> Appellee Br. at 17 ("Neither <u>Martin</u> nor § 2000e-

12

2(n) are relevant to the present case."). Section 2000e-2(n) therefore does not insulate the city's certification of the test results.

* * *

For these reasons, under well-settled Supreme Court precedent, Briscoe's claim is not precluded by Ricci (notwithstanding Briscoe's knowledge that the proceedings were pending and his failure to timely intervene). We are skeptical that the Court would use one sentence in Ricci to silently revise preclusion principles that were unanimously reaffirmed just over a year before in Taylor.

**II**

The city's primary argument is for a broad, two-way reading of Ricci's "strong basis in evidence" standard. The argument requires us to consider this standard for the first time.[6]

---

[6] We have no need to consider, much less invite adherence to, the extended dicta as to the potential contours of the doctrine for a disparate-treatment claim offered in United States v. Brennan, No. 08-5171-cv, 2011 U.S. App. LEXIS 9455, at *123-37, *168-88 (2d Cir. May 5, 2011); id. at *218-19 (Raggi, J., concurring in the judgment) (cautioning that "majority opinion . . . yields an abundance of dicta that could confuse future consideration of judgments actually based on Ricci.").

13

The parties agree that <u>Ricci</u> established a new standard for disparate-treatment claims: A disparate-treatment claim is avoidable based on concerns about disparate-impact liability only if there was a "strong basis in evidence" of such liability. <u>Ricci</u>, 129 S. Ct. at 2677. Late in the opinion, however, the Court contemplated the reverse scenario--"avoid[ance]" of a disparate-*impact* suit:

> If, after it certifies the test results, the City faces a disparate-impact suit, then in light of our holding today it should be clear that the City would avoid disparate-impact liability based on the strong basis in evidence that, had it not certified the results, it would have been subject to disparate-treatment liability.

<u>Id.</u> at 2681.

The city characterizes this one sentence of dicta as establishing a symmetrical companion to <u>Ricci</u>'s earlier holding that an employer may avoid disparate-treatment claims based on a "strong basis in evidence" of disparate-impact liability. That is, the city argues that an employer may defeat a disparate-impact claim if it had a strong basis in evidence that it would have been subject to disparate-treatment liability. The city argues that Briscoe's suit was properly dismissed not because it was precluded but because the Supreme Court's <u>Ricci</u> mandate itself supplied

14

the strong basis in evidence of disparate-treatment liability (for not certifying the results).

The dicta contemplating a disparate-impact standard symmetrical to the disparate-treatment standard established in the holding is perhaps attributable to a simple logical error.  The sentence does not present a holding but rather a conclusion--an apparent logical truth--derived from the holding: "*[I]n light of our holding today it should be clear that the City would avoid disparate-impact liability based on the strong basis in evidence that, had it not certified the results, it would have been subject to disparate-treatment liability.*"  129 S. Ct. at 2681 (emphasis added). When simplified into a conditional statement, this conclusion resembles the converse of--and shares some of the language from--the only express holding in <u>Ricci</u>, 129 S. Ct. at 2677 ("We hold only that, under Title VII, before an employer can engage in intentional discrimination for the asserted purpose of avoiding or remedying an unintentional disparate impact, the employer must have a strong basis in evidence to believe it will be subject to disparate-impact liability if it fails to take the race-conscious, discriminatory action."), but it has no actual logical

relationship to the holding.

In any event, we see no way to reconcile the dicta, on which the city's argument relies, with either the Court's actual holding in <u>Ricci</u> or long-standing, fundamental principles of Title VII law:

First, all other indications in the opinion are of a holding limited to formulation of a standard for disparate-treatment liability:

> We hold *only* that, under Title VII, before an employer can engage in intentional discrimination for the asserted purpose of avoiding or remedying an unintentional disparate impact, the employer must have a strong basis in evidence to believe it will be subject to disparate-impact liability if it fails to take the race-conscious, discriminatory action.

<u>Id.</u> at 2677 (emphasis added). The city's argument finds arguable support in wording that leads up to this holding (set out in the margin).[7] But the context discusses

---

[7] At one point, the Court broadly describes the case as resolving *any* conflict between disparate-treatment and disparate-impact claims:

> Applying the strong-basis-in-evidence standard to Title VII gives effect to both the disparate-treatment and disparate-impact provisions, allowing violations of one in the name of compliance with the other only in certain, narrow circumstances. . . .
> * * *
> For the foregoing reasons, we adopt the strong-basis-in-evidence standard as a matter of

16

"[r]estricting an employer's ability to discard test results"--and is thus limited to the express holding.[8]  In any event, the Court's precise formulation of its holding (corroborated elsewhere in the majority opinion,[9] and by

statutory construction to resolve any conflict between the disparate-treatment and disparate-impact provisions of Title VII.

Id. at 2676.

[8] The surrounding context clearly limits the broader language quoted in note 7, ante, to an employer's ability to discard test results:

[T]he standard appropriately constrains employers' discretion in making race-based decisions: It limits that discretion to cases in which there is a *strong basis in evidence of disparate-impact liability . . . .*
\*     \*     \*
Restricting an employer's *ability to discard test results* (and thereby discriminate against qualified candidates on the basis of their race) also is in keeping with Title VII's express protection of bona fide promotional examinations.
\*     \*     \*
[O]nce [a] process has been established and employers have made clear their selection criteria, they may not then *invalidate the test results . . . . absent a strong basis in evidence of an impermissible disparate impact*. . . .

Id. at 2676-77 (emphases added).

[9] Earlier, the court summarized its conclusion:

We conclude that race-based action like the City's in this case is impermissible under Title VII unless the employer can demonstrate a strong basis in evidence that, had it not taken the

17

concurring and dissenting opinions[10]) supersedes any dicta arguably to the contrary.

---

action, it would have been liable under the disparate-impact statute.

Id. at 2664.

[10] Justice Alito frames the issue:

The question . . . concerns . . . when an employer justifies an employment decision . . . on the ground that a contrary decision would have created *a risk of disparate-impact liability*.  The Court holds--and I entirely agree--*that concern about disparate-impact liability* is a legitimate reason for a decision of the type involved here only if there was a substantial basis in evidence to find the tests inadequate.

Id. at 2683 (Alito, J., concurring) (emphases added and internal quotation marks omitted).

In her dissent, Justice Ginsburg frames her proposed holding, which is also limited to a one-way approach:

I would therefore hold that an employer who jettisons a selection device when its disproportionate racial impact becomes apparent does not violate *Title VII's disparate-treatment bar* automatically or at all, subject to this key condition: The employer must have good cause to believe the device would not withstand examination for business necessity.

Id. at 2699 (Ginsburg, J., dissenting) (emphasis added).

Justice Scalia raises the larger question of whether the disparate-impact provisions are consistent with the Equal Protection Clause, id. at 2682 (Scalia, J., concurring), but does not discuss the scope of the Court's holding.

Second, the question that <u>Ricci</u> answers for disparate-treatment claims has already been answered for claims of disparate impact.  Clarification was needed, which <u>Ricci</u> supplied, as to when an act that would otherwise trigger disparate-treatment liability is excusable due to concern over disparate impact.  This is because the subsection that governs disparate-treatment claims, 42 U.S.C. § 2000e-2(a), provides no clarification as to what informs the "discriminatory intent or motive" analysis.  <u>See</u> <u>Watson v. Fort Worth Bank & Trust</u>, 487 U.S. 977, 986 (1988).  But the corresponding question for a disparate-impact claim--when an employment practice that would otherwise trigger disparate-impact liability is excusable due to concern over disparate treatment--is answered by the statutory definition of the claim: Conduct that is "job related" and "consistent with business necessity" is permissible even if it causes a disparate impact (unless there is an "alternative employment practice" that would reduce the disparate impact, which the employer refuses to adopt).  § 2000e-2(k)(1).  There is no need to stretch <u>Ricci</u> to muddle that which is already clear.

Third (and relatedly), these disparate-impact

parameters are statutory,[11] unlike the contours of a disparate-treatment claim, which are predominantly supplied by case law.  We would expect that any holding that is meant to shape the contours of a disparate-impact claim would cite and quote the statute, and discuss the interplay between the text and the new principle.  (We would also expect the pronounced disagreement[12] that has accompanied previous revisions of settled disparate-impact principles.  See, e.g., Wards Cove Packing Co. v. Atonio, 490 U.S. 642 (1989).)

Fourth, it is difficult to see how a "strong basis in evidence" can be established for a disparate-treatment claim.  The city avoids the issue by the narrow argument that a court judgment satisfies this burden; but it fails to consider what would suffice *other* than a court's mandate.

---

[11] The doctrine originated from case law, see Griggs v. Duke Power Co., 401 U.S. 424 (1971), but was later codified by the Civil Rights Act of 1991, see § 2000e-2(k)(1).

[12] Although four justices dissented in Ricci, 129 S. Ct. at 2689 (Ginsburg, J., dissenting) (joined by Justices Stevens, Souter, and Breyer), the dissenting opinion did not mention the dicta from the majority opinion contemplating that the city might "avoid [future] disparate-impact liability based on the strong basis in evidence that, had it not certified the results, it would have been subject to disparate-treatment liability," 129 S. Ct. at 2681 (majority opinion).

And the city's argument, framed that way, differs little from nonparty preclusion, which is plagued by the issues discussed above. Yet it is hard to see how one can adduce a "strong basis in evidence" that oneself will later act with "discriminatory intent or motive." See Watson, 487 U.S. at 986. Showings other than a court mandate are conceivable,[13] but they would be fiendishly complicated, and therefore unsuitable for a conduct-guiding standard. In contrast, the "strong basis in evidence" standard that the majority opinion in Ricci explicitly establishes to evaluate whether an employer can engage in *disparate treatment* employs the quantitative metrics of *disparate-impact* law. Unlike disparate-treatment liability, in which intent is a core consideration and for which consistent standards are simply impractical, disparate-impact liability involves quantitative metrics that resonate with an objective "strong basis in evidence" standard. See Gulino v. N.Y. State Educ.

---

[13] See, e.g., Joseph A. Seiner and Benjamin N. Gutman, *Does Ricci Herald a New Disparate Impact?*, 90 B.U. L. Rev. 2181, 2204-09 (2010) (interpreting this sentence in Ricci as establishing a new affirmative defense to disparate-impact liability--similar to qualified-immunity--based upon a complicated, recursive application of Ricci's holding). The theory is intriguing, but is inconsistent with the unavailability of a good-faith defense for disparate-impact liability. See Ricci, 129 S. Ct. at 2682 (Scalia, J., concurring).

21

Dep't, 460 F.3d 361, 382 (2d Cir. 2006).

Fifth, the "strong basis in evidence" standard, which the majority opinion in Ricci expressly applies to disparate-treatment claims under Title VII, 129 S. Ct. at 2677, was borrowed from equal protection case law that analyzed laws with classifications based on race, id. at 2675-76; see, e.g., Richmond v. J. A. Croson Co., 488 U.S. 469, 500 (1989), and thus neatly extends to statutory claims for intentional discrimination.  In contrast, neutral laws with "a disproportionately adverse effect upon a racial minority" are outside the purview of the Equal Protection Clause.  Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 272 (1979); see also Ricci, 129 S. Ct. at 2683 (Scalia, J., concurring) ("[T]he war between disparate impact and equal protection will be waged sooner or later, and it behooves us to begin thinking about how--and on what terms--to make peace between them."); id. at 2700 (Ginsburg, J., dissenting) ("The Equal Protection Clause . . . prohibits only intentional discrimination; it does not have a disparate-impact component.").  We cannot expect that Ricci's express holding would apply symmetrically to two doctrines that by nature are asymmetrical.

22

Finally, extending the express holding in <u>Ricci</u> to a disparate-impact claim would seem to be unnecessary. An employer seeking to protect itself from the interplay between disparate-impact and disparate-treatment liability needs only the guidance from the express holding of <u>Ricci</u>.

* * *

The <u>Ricci</u> opinion anticipated this case, and discounted the idea that the city would suffer the whipsaw effect that our analysis justifies. To rule for the city, we would have to conclude that the Supreme Court intended to effect a substantial change in Title VII disparate-impact litigation in a single sentence of dicta targeted only at the parties in this action.

**III**

We are sympathetic to the effect that this outcome has on the city, which has duly certified the test as ordered by the Supreme Court but now must defend a disparate-impact suit. The City of Birmingham faced the same issue in <u>Martin</u>. Any employer that intentionally discriminates-- thinking there is a strong basis in evidence of disparate-impact liability--will face the same issue if it loses a

23

disparate-treatment suit.[14]

The solutions already exist.  First, an employer can seek to join all interested parties as required parties.  See Fed. R. Civ. P. 19.  The interested parties here were readily identifiable: The city could have joined all test-takers prior to the district court's original decision.  If Briscoe had been a party, the Supreme Court's decision would have precluded this suit.  Second, an employer can use the expedient provided by Congress, 42 U.S.C. § 2000e-2(n).  The city could have moved, prior to the district court's original ruling, for compliance with the notice and opportunity-to-object requirements of § 2000e-2(n), which would have permitted the litigated judgment to have preclusive effect even over nonparties.

The Ricci plaintiffs are amici in this case.  (At the time of oral argument, Ricci was ongoing in the district court and, judging by the docket sheet, was as contentious as ever; but the parties ultimately settled on July 27, 2011.  See New Haven Firefighters Settle Claims of Racial

---

[14] One could argue--and the city does, Appellee Br. at 22--that this case is different from the other examples: the *Supreme* Court ordered it to certify *this* list for *this* exam. But that is just an iteration of the untenable preclusion argument.

24

Bias, N.Y. Times, July 28, 2011.) They have a fair claim to a clarification. Although we hold that Briscoe's claim can proceed, the Ricci plaintiffs of course remain entitled to the full fruits of the Supreme Court judgment that they obtained. In order to give effect to bedrock principles of nonparty preclusion as well as to the Supreme Court's order to certify the results, we limit Briscoe's equitable relief insofar as it may interfere with the relief--present and future--afforded to the Ricci plaintiffs by the certification of the exam results. (This caveat may be superfluous, because Briscoe has repeatedly confirmed that he seeks relief that is fully consistent with the Supreme Court's judgment. See Appellant Br. at 9-10; Reply Br. at 21-22; Joint Appendix at 134-35.)

**CONCLUSION**

This case is the first in our Circuit to require a precedential examination of Ricci v. DeStefano, 129 S. Ct. 2658 (2009). As we have shown, we cannot reconcile all of the indications from the Supreme Court in Ricci. After a careful review of that decision and relevant nonparty preclusion and Title VII case law, we conclude that

25

Briscoe's claim is neither precluded nor properly dismissed. *Ricci* did not substantially change Title VII disparate-impact litigation or preclusion principles in the single sentence of dicta targeted at the parties in this action. We follow the Court's clear explication of its limited holding.

Accordingly, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion. But we express no view as to whether other issues raised below may warrant dismissal of the action, including relevant statutes of limitations, the doctrine of laches, or the unavailability of the requested relief because of Title VII's anti-alteration provision (42 U.S.C. § 2000e-2(l)).