Chief Judge Fuld.
The petitioners herein are trustees of various trusts, some testamentary and some inter vivos. A portion of the trust property comprises a minority stock interest in a corporation (Scarborough Properties), the assets of which consist of securities and real estate. One of the trustees (Dudley Schoales), desiring to purchase a portion of the property held in trust, has, along with his cotrustees, brought this proceeding, pursuant to article 77 of the CPLR, for court approval of the sale. The courts below gave their approval and authorized the sale, and we granted leave to consider the propriety of that decision.
Frank A. Vanderlip, Sr. and his wife Narcissa in 1923 organized Scarborough Properties Corporation, a family corporation (at times hereafter referred to as the corporation). Sixty-seven per cent of its 8,937 shares of stock are now owned outright by their surviving children and the spouses of deceased children. Nearly all of the remainder — 32%—is held in trusts for the benefit of their 13 grandchildren.[1] Of this 32% stock interest in Scarborough Properties, 11% is held in testamentary trusts created by Mr. Vanderlip, who died in 1937, and 21% is held in inter vivos trusts set up by Mrs. Vanderlip in 1953. The testamentary trustees are the petitioners, First National City Bank, Frank Vanderlip, Jr. (the decedent’s son), and Virginia Schoales (the decedent’s daughter).■ Those three and, in addition, petitioner Schoales (Virginia’s husband) are trustees of the inter vivos trusts.
*556 Of the 13 grandchildren, only the two appellants, Claudia Street Smith and Amanda Street Palmer — and the latter’s three infant children, contingent remaindermen, who are represented by their father — now oppose the sale of the corporate property to Mr. Schoales. The testamentary and inter vivos trusts of which they are beneficiaries hold only about 9% of the stock of this close corporation.[2] The other adult grandchildren either favor or do not oppose the sale. Thus, the children and the spouses of deceased children of the Vanderlips who own 67 fo of the shares have approved Mr. Schoales’ offer to buy the property under a stock purchase arrangement. The guardian ad litem, representing all the infant beneficiaries other than the Palmer children, has recommended that the court accept the offer. Mr. Schoales has succeeded in obtaining options to purchase over 90'% of the stock of the corporation.
Among the parcels of realty owned by the corporation was the many-acred old family homestead known as Beechwood. Located in Scarborough-on-Hudson, Westchester County, it is situated on the Albany Post Road and overlooks the Hudson River. Until her death in 1966, Mrs. Vanderlip occupied Beechwood and its surrounding acres pursuant to an agreement with the corporation under which she had been given a life estate provided she met all carrying charges. The residence itself is an obsolete, dilapidated 40-room mansion which- was practically valueless when she died. The burden of paying the carrying charges — about $20,000 annually—then fell upon the corporation. It had been in a precarious financial condition for years, and the additional expense of Beechwood, occurring upon Mrs. Vanderlip’s demise, made it imperative that it dispose of that property.
Frank Vanderlip, Jr., as president of the corporation, sought to interest a number of parties in its purchase. The attempts proved unsuccessful and, while a brochure was being drafted for general circulation among realtors, Mr. Schoales returned from an extended trip abroad. Informed of the sales efforts that had been made, he told Mr. Vanderlip that he would be interested in acquiring Beechwood if he could afford the cost *557 and if the value of the property was fixed by an independent and reputable appraiser. A highly regarded expert, selected by the First JSTational City Bank and not personally known to Schoales, valued the property at $227,000 on the basis of $7,000 an acre. After obtaining options on some 93% of the corporation’s stock, and relying upon the appraisal that had been made, Mr. Schoales made an offer to the corporation pursuant to which he would deliver to it shares of stock having a total value of $227,000 and the corporation would convey to him Beechwood in partial liquidation. The corporation would not be required to pay brokerage commissions and, in addition, according to the testimony of a tax expert, it would have the benefit of considerable tax savings. The $7,000-an-acre was raised to $8,000 — and the overall price of $227,000 increased to $254,000—when the guardian ad litem disapproved the lower figure and recommended the higher.
The Supreme Court Justice ( Gagliabdi, J.), to whom the petition had been submitted, thereupon ordered that a hearing be held to determine whether Mr. Schoales ’ amended offer was fair and adequate.
That hearing, and it was most exhaustive, was conducted by Supreme Court Justice Galloway. Mr. 'Schoales took the stand and explained his motivation. It was his purpose, he said, to obtain and preserve Beechwood for the benefit and use of the adjacent Scarborough School, which his father-in-law had formed and which all the grandchildren had attended, in conformity with the Vanderlip family’s policy and interest in that school. More, he planned to keep the land out of “ the hands of a developer ” so that it would remain available for the school’s future growth and development.[3] There was additional testimony from others that the corporation had been losing money and had paid no dividends for many years; that its stock would be virtually impossible to sell; that it comprised an overly large proportion of the total assets of the trusts; and that the price offered by Schoales, particularly in view of the hoped for tax advantages and the elimination of brokerage commissions, *558 was considerably higher than could ordinarily be expected for the stock of a close corporation.
Following the conclusion of the trial, the judge approved the amended offer of $8,000 an acre and authorized the sale. He found “without merit” the appellants’ contention that it is “ improper ” for a court to approve a private sale of trust property by trustees to one of their fellow trustees in the absence of a prior public offering of such property on the open market. In the course of his able and thorough opinion, the trial justice noted that “this is not the case of a [‘ self-dealing ’] trustee selling his trust assets to himself at private sale”, pointing out that “ [t]he corporate owner of ‘Beechwood ’ proposes to convey that property to one of several trustees who hold slightly less than one-third of the corporation’s outstanding stock.” Then, after remarking that “it is the duty of the fiduciaries, including Mr. Schoales, to obtain the largest sum possible for the property and upon other terms most advantageous to the trust beneficiaries ” and that there “is no reliably persuasive proof * * * that an open sale on the so-called competitive market will produce a result more advantageous to the trust beneficiaries than the Schoales proposal ”, he went on to say that “ [w]e are not required by any rule of the law of trusts to ignore the fact that the holders of better than 1% times as many shares of the corporate stock as are held by the fiduciaries and 4 times as many shares as are represented by the objecting respondents [the appellants before us] have twice voted their approval of the private sale to Mr. Schoales.”
The rule has long been established that a trustee “ should not be allowed to become the purchaser of the trust property, because of the danger, in such a case, that the interests of the beneficiary might be prejudiced.” (Corbin v. Baker, 167 N. Y. 128, 132; see Matter of Hubbell, 302 N. Y. 246; Matter of Fulton, 253 App. Div. 494; Davoue v. Fanning, 2 Johns. Ch. 252; see, also, Meinhard v. Salmon, 249 N. Y. 458, 464.) However, there is little danger of such prejudice if the transaction is subjected to prior judicial scrutiny and given court approval. Accordingly, the rule against self-dealing has not been applied, and does not apply, to interdict the purchase of trust property by a trustee where the court, after conducting a full advérsary hear *559 ing at which all interested parties are represented, approves and authorizes the sale. (See Corbin v. Baker, 167 N. Y. 128, supra; Scholle v. Scholle, 101 N. Y. 167; Gallatian v. Cunningham, 8 Cow. 361, 380-381; see, also, 2 Sugden, Vendors and Purchasers [7th Am. ed., 1851], par. 33, p. 376; 2 Scott, Trusts [3d ed., 1967], § 170.7, p. 1319; Restatement, 2d, Trusts, § 170, comment f.)
It is true, as asserted by the appellants, that both the Scholle (101 N. Y. 167, supra) and Corbin (167 N. Y. 128, supra) cases involved judicial approval of a trustee’s purchase at a public sale but there is no indication that the court intended to restrict its holding to that situation, and we perceive no reason or basis for any such limitation. Indeed, in the Corbin case, we declared that the court has ‘ ‘ the power * * * to relieve from the rule ” — that a trustee may not purchase trust property—and may “ upon a consideration of the facts, authorize the purchase ” (167 N. Y., at p. 134), and Professor Scott is just as explicit (2 Scott, Trusts [3d ed., 1967] p. 1319): “ The reason why the permission or approval of the court is sufficient to justify a sale of trust property to the trustee personally is that a court of equity is a court having general supervision over the administration of trusts, and if the parties are properly represented before it, it has authority to authorize what would otherwise not be permissible.”
Since all interested parties were represented at the hearing and there was a full exploration of the facts, it is manifest that the court had the power to act as it did, and it is just as clear that it properly exercised that power. The evidence is convincing that there was no market for the stock of the closely held Scarborough Properties Corporation, especially in view of the fact that it had been losing money over the years. The overriding consideration was the precarious position of trusts holding a very small minority stock interest in an impoverished corporation over which neither Mr. Sehoales nor the other trustees had any control. As already noted, the stock owned by the trusts is but 32% of the corporation’s total issue and, of that percentage, only 21% was held by the inter vivos trust of which Sehoales is a trustee. The significant fact, therefore, is that 67% of the stock is owned outright by eight individuals and that all of them favor the sale. In sum, the courts below *560 were fully justified in concluding that there had been arm’s-length bargaining between the purchasing trustee and the shareholders owning more than two thirds of the stock outright, that the offered $8,000 an acre was the highest possible price to be had and that the sale was in the best interests of the beneficiaries.
We find without substance the appellants’ objection to the payment of fees out of the trust estate to the petitioners ’ attorneys. It is. contended that, by acting for Mr. Schoales personally as well as for the trustees, they "put themselves in a position of a conflict of interests ” and should, therefore, be denied compensation out of trust assets. The decisions upon which the appellants rely are beside the point, involving, as they do, clear “ cases of divided loyalty ”. (Matter of Clarke, 12 N Y 2d 183, 188; see, also, Matter of Jones, 8 N Y 2d 24, 28.) Here, in sharp contrast, Mr. Schoales, far from acting against the interests of his beneficiaries, petitioned the court, laid the entire matter before it and refused to act except with its approval.
The order appealed from should be affirmed, with costs.
Judges Burke, Scileppi, Bergan, Breitel, Jasen and Gibson concur.
Order affirmed.

. Except for one share owned by the petitioners, as executors under Mrs. Vanderlip’s will, all of the stock- is held by members, either by blood or marriage, of the Vanderlip family.

. Five per cent of this (9%) .stock is in the testamentary trusts; Mr. Schoales, as previously stated, is not a trustee of any of those trusts.

. Mr. Schoales acquiesced in the further recommendation of the guardian ad litem that he agree to give the corporation one third of any profit he might make on a sale or condemnation of Beechwood occurring within five years.