11-5309-cv(L)
BlackRock Financial Management Inc., et al. v. The Segregated Account of Ambac Assurance
Corporation, et al.

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2011

(Argued: February 15, 2012     Decided: February 27, 2012)

Docket Nos. 11-5309-cv(L); 11-5314-cv(CON)

- - - - - - - - - - - - - - - - - - - - -x

BLACKROCK FINANCIAL MANAGEMENT INC., MAIDEN LANE, LLC,
MAIDEN LANE II, LLC, KORE ADVISORS, L.P., METROPOLITAN LIFE
INSURANCE COMPANY, TRUST COMPANY OF THE WEST AND AFFILIATED
COMPANIES CONTROLLED BY THE TCW GROUP, INC., MAIDEN LANE
III, LLC, PACIFIC INVESTMENT MANAGEMENT COMPANY LLC, GOLDMAN
SACHS ASSET MANAGEMENT, L.P., NEUBERGER BERMAN EUROPE
LIMITED, INVESCO ADVISERS, INC., THRIVENT FINANCIAL FOR
LUTHERANS, TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF
AMERICA, LBBW ASSET MANAGEMENT (IRELAND) PLC, DUBLIN, ING
BANK N.V., LANDESBANK BADENWUERTTEMBURG, ING INVESTMENT
MANAGEMENT LLC, NEW YORK LIFE INVESTMENT MANAGEMENT LLC,
NATIONWIDE MUTUAL INSURANCE COMPANY AND ITS AFFILIATED
COMPANIES, ING CAPITAL LLC, AEGON FINANCIAL ASSURANCE
IRELAND LIMITED, TRANSAMERICA LIFE INTERNATIONAL (BERMUDA)
LTD., AEGON USA INVESTMENT MANAGEMENT LLC, AUTHORIZED
SIGNATORY FOR TRANSAMERICA LIFE INSURANCE COMPANY,
TRANSAMERICA ADVISORS LIFE INSURANCE COMPANY, AEGON GLOBAL
INSTITUTIONAL MARKETS, PLC, MONUMENTAL LIFE INSURANCE
COMPANY, PINE FALLS RE, INC., TRANSAMERICA FINANCIAL LIFE
INSURANCE COMPANY, LIICA RE II, INC., WESTERN RESERVE LIFE
ASSURANCE CO. OF OHIO, FEDERAL HOME LOAN BANK OF ATLANTA,
STONEBRIDGE LIFE INSURANCE COMPANY, PRUDENTIAL INVESTMENT
MANAGEMENT, INC., WESTERN ASSET MANAGEMENT COMPANY,
BAYERISCHE LANDESBANK, THE BANK OF NEW YORK MELLON, as

Trustee under various Pooling and Servicing Agreements and Indenture Trustee Under Various Indentures,

Petitioners-Appellants,

- v.-

THE SEGREGATED ACCOUNT OF AMBAC ASSURANCE CORPORATION, AMBAC ASSURANCE CORPORATION, TRIAXX PRIME CDO 2007-1, LTD., TRIAXX PRIME CDO 2006-2, LTD., TRIAXX PRIME CDO 2006-1, LTD., COMMONWEALTH INVESTORS, AMERICAN EQUITY INVESTMENT LIFE INSURANCE COMPANY, WALNUT PLACE LLC, WALNUT PLACE II LLC, WALNUT PLACE III LLC, WALNUT PLACE IV LLC,  WALNUT PLACE V LLC, WALNUT PLACE VI LLC, WALNUT PLACE VII LLC, WALNUT PLACE VIII LLC, WALNUT PLACE IX LLC, WALNUT PLACE X LLC, WALNUT PLACE XI LLC, FEDERAL HOME LOAN BANK OF SAN FRANCISCO, FEDERAL HOME LOAN BANK OF SEATTLE, RMBS ACQUISITION, INC., CRANBERRY PARK LLC, CRANBERRY PARK II LLC, TM1 INVESTORS, LLC, V RE-REMIC, LLC, POLICEMENS ANNUITY & BENEFIT FUND OF CHICAGO, THE WESTMORELAND COUNTY EMPLOYEE RETIREMENT SYSTEM, CITY OF GRAND RAPIDS GENERAL RETIREMENT SYSTEM, CITY OF GRAND RAPIDS POLICE AND FIRE RETIREMENT SYSTEM, FEDERAL HOME LOAN BANK OF BOSTON, FEDERAL HOME LOAN BANK OF CHICAGO, FEDERAL HOME LOAN BANK OF INDIANAPOLIS, FEDERAL HOME LOAN BANK OF PITTSBURGH, THE WESTERN AND SOUTHERN LIFE INSURANCE COMPANY, COLUMBUS LIFE INSURANCE COMPANY, WESTERN-SOUTHERN LIFE ASSURANCE COMPANY, INTEGRITY LIFE INSURANCE COMPANY, NATIONAL LIFE INSURANCE COMPANY, FORT WASHINGTON INVESTMENT ADVISORS, INC. ON BEHALF OF FORT WASHINGTON ACTIVE FIXED INCOME LLC, AMERICAN INTERNATIONAL GROUP, INC., AMERICAN GENERAL ASSURANCE COMPANY, AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE COMPANY, AMERICAN GENERAL LIFE INSURANCE COMPANY, AMERICAN GENERAL LIFE INSURANCE COMPANY OF DELAWARE, AMERICAN HOME ASSURANCE COMPANY, AMERICAN INTERNATIONAL LIFE ASSURANCE COMPANY OF NEW YORK, CHARTIS SELECT INSURANCE COMPANY, CHARTIS PROPERTY CASUALTY COMPANY, COMMERCE AND INDUSTRY INSURANCE COMPANY, FIRST SUNAMERICA LIFE INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY,

2

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, NEW HAMPSHIRE INSURANCE COMPANY, SUNAMERICA ANNUITY AND LIFE ASSURANCE COMPANY, SUNAMERICA LIFE INSURANCE COMPANY, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, THE VARIABLE ANNUITY LIFE INSURANCE COMPANY, WESTERN NATIONAL LIFE INSURANCE COMPANY, KNIGHTS OF COLUMBUS,

Respondents-Appellees.*

- - - - - - - - - - - - - - - - - - - - -x


Before:      JACOBS, Chief Judge, HALL and LOHIER, Circuit Judges.

On this appeal from an order of the United States District Court for the Southern District of New York (Pauley, J.), which denied petitioners' motion to remand an Article 77 proceeding to New York Supreme Court, we conclude that the case falls within the securities exception to both original and appellate jurisdiction under the Class Action Fairness Act of 2005. We therefore dismiss the appeal, reverse the order of the district court, and instruct it to vacate its decision and order and remand the matter to the state court.

---

* The Clerk of the Court is respectfully directed to amend the official caption to conform with that listed above.

ROBERT MADDEN, Gibbs & Bruns, LLP, Houston, TX (Kathy Patrick, Gibbs & Bruns, LLP, Houston, TX, Kenneth E. Warner, Warner Partners, P.C., New York, NY, *on the brief*), for Petitioners-Appellants BlackRock Financial Management, Inc., et al.

ANDREW L. FREY, Mayer Brown LLP, New York, NY (Matthew D. Ingber, Christopher J. Houpt, Mayer Brown LLP, New York, NY, Charles A. Rothfeld, Brian J. Wong, Mayer Brown LLP, Washington, DC, Hector Gonzalez, James M. McGuire, Dechert LLP, New York, NY, *on the brief*), for Petitioner-Appellant The Bank of New York Mellon.

OWEN L. CYRULNIK, Grais & Ellsworth LLP, New York, NY (David J. Grais, Kathryn E. Matthews, Leanne M. Wilson, *on the brief*), for Respondents-Appellees Walnut Place LLC, et al.

Rachel Allison Gupta, DLA Piper LLP, New York, NY, for Respondents-Appellees The Segregated Account of Ambac Asssurance Coorporation & AMBAC Assurance Corporation.

John G. Moon, Miller & Wrubel P.C., New York, NY, for Respondents-Appellees Triaxx Prime CDO 2007-1, Ltd., et al.

Justin M. Sher, Sher LLP, New York,NY, for Respondent-Appellee Commonwealth Investors.

4

Peter N. Tsapatsaris, Peter N. Tsapatsaris, LLC, New York, NY, <u>for Respondents-Appellees</u> American Equity Investment Life Insurance Company & Knights of Columbus.

David J. Grais, Grais & Ellsworth LLP, New York, NY , <u>for Respondents-Appellees</u> Federal Home Loan Bank of San Francisco, <u>et al.</u>

Beth A. Kaswan, Scott+Scott LLP, New York, NY, <u>for Respondents-Appellees</u> Policemens Annuity & Benefit Fund of Chicago, <u>et al.</u>

Derek W. Loeser, Amy Christine Williams-Derry, Keller Rohrback, L.L.P., Seattle, WA, Gary A. Gotto, Ron Kilgard, Keller Rohrback, PLC, Phoenix, AZ <u>for Respondents-Appellees</u> Federal Home Loan Bank of Boston, <u>et al.</u>

Heather Yue-Ling Fong, Robbins, Kaplan, Miller & Ciresi, LLP, New York, NY, <u>for Respondent-Appellee</u> Federal Home Loan Bank of Pittsburgh.

Daniel M. Reilly, Reilly Pozner, L.L.P., Denver, CO, <u>for Respondents-Appellees</u> Columbus Life Insurance Company, <u>et al.</u>

THEODORE N. MIRVIS, Wachtell, Lipton, Rosen & Katz, New York, NY (George T. Conway III, Elaine P. Golin, Won S. Shin, *on the brief*), <u>for Amicus Curiae</u> Bank of America Corporation.

DENNIS JACOBS, <u>Chief Judge</u>:

On this appeal from an order of the United States District Court for the Southern District of New York (Pauley, <u>J.</u>) denying petitioners' motion to remand an Article 77 proceeding to New York Supreme Court, we consider again the application of 28 U.S.C. §§ 1453(d)(3) and 1332(d)(9)(C), exceptions to the federal jurisdiction conferred by the Class Action Fairness Act of 2005 ("CAFA"), Pub.L. No. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28, United States Code).

The Bank of New York Mellon, acting in its capacity as trustee of trusts established to hold residential mortgage-backed securities, settled claims that the originator and servicer breached obligations owed to the trusts. Then, as a condition precedent to the settlement, The Bank of New York Mellon initiated an Article 77 proceeding in New York Supreme Court to confirm that it had the authority to enter into the settlement under the governing trust documents and that entry into the settlement did not violate its duties under the governing trust agreements and state law. Certain investors intervened in the special proceeding and removed

6

the proceeding to federal court under CAFA. A motion to remand--on the ground, among others, that the controversy fell within CAFA's securities exception, 28 U.S.C. § 1332(d)(9)--was denied. Bank of New York Mellon v. Walnut Place LLC, No. 11 Civ. 5988 (WHP), 2011 WL 4953907 (S.D.N.Y. Oct. 19, 2011).

We hold that the case falls within CAFA's securities exception as one that solely involves a claim that "relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to" a security. Accordingly, we dismiss the petition for lack of jurisdiction, reverse the order of the district court, and instruct it to vacate its decision and order and remand the matter to the state court.

## BACKGROUND

The features of residential mortgage-securitization trusts are well known in the recent annals of litigation. See, e.g., Greenwich Fin. Svcs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp., 603 F.3d 23 (2d Cir. 2010); In re

7

IndyMac Mortgage-Backed Sec. Litig.,793 F. Supp. 2d 637 (S.D.N.Y. 2011).  To raise funds for new mortgages, a mortgage lender sells pools of mortgages into trusts created to receive the stream of interest and principal payments from the mortgage borrowers.  The right to receive trust income is parceled into certificates and sold to investors, called certificateholders.  The trustee hires a mortgage servicer to administer the mortgages by enforcing the mortgage terms and administering the payments.  The terms of the securitization trusts as well as the rights, duties, and obligations of the trustee, seller, and servicer are set forth in a Pooling and Servicing Agreement ("PSA").

At issue in this case are 530 such trusts created between 2004 and 2008, for which The Bank of New York Mellon is trustee.  The home mortgages were sold into the trusts by Countrywide Home Loans, Inc.--now a subsidiary of Bank of America--and are serviced by Countrywide's servicing arm.[1]

---

[1] Countrywide Home Loans, Inc.'s parent company, Countrywide Financial Corporation, was acquired by Bank of America Corporation in July 2008, after the last of the trusts was created.  Countrywide Home Loans Servicing LP, which has since been renamed BAC Home Loans Servicing, LP after the Bank of America acquisition, services the mortgages. Investors in the trust have alleged that Bank of America

Countrywide made representations and warranties that the mortgages conformed to the trusts' requirements for credit quality, property value, title, and lien priority.[2]  A breach of any such representation or warranty required the seller to cure or repurchase at the mortgage purchase price. The servicing and administration of the mortgage loans was required to be "in accordance with the terms of [the PSA] and customary and usual standards of practice of prudent mortgage loan servicers."  PSA § 3.01.  The PSAs granted to the trustee, "for the benefit of the Certificateholders," the "right to require each Seller to cure any breach of a representation or warranty made herein by Seller, or to repurchase or substitute for any affected Mortgage Loan in accordance herewith."  PSA § 2.01(b).

Two organized groups of certificateholders are opposed in this case.  The "Institutional Investors" are aligned

---

is liable for Countrywide's obligations under the PSAs.

[2] The vast majority of the 530 trusts are governed by PSAs. The remainder are governed by indentures and Sale and Servicing Agreements.  Appellants have represented, and Walnut Place does not dispute, that the agreements are sufficiently similar for the Court to rely on a representative PSA for purposes of this appeal.  Decl. of Matthew D. Ingber Ex. A ("PSA") (Dist. Ct. Docket No. 56).

with The Bank of New York Mellon and include such large financial institutions as BlackRock Financial Management Inc., Goldman Sachs Asset Management L.P., Federal Home Loan Mortgage Corporation, and Maiden Lane LLC and associated entities formed by the Federal Reserve Bank of New York. The "Walnut Place" group is the set of investors that intervened in the state proceeding and removed it to federal court. Everyone is a sophisticated investor.

In June 2010, the Institutional Investors complained to The Bank of New York Mellon that a large number of mortgages that Countrywide sold into the trusts failed to comply with the PSAs' representations and warranties. In October, they complained that the servicer had also breached its obligations. Negotiations, aimed at avoiding litigation, ensued among the Institutional Investors, Countrywide, Bank of America, and The Bank of New York Mellon.

Walnut Place also complained to The Bank of New York Mellon that Countrywide was in breach. Countrywide had refused Walnut Place's direct demand that Countrywide repurchase the nonconforming loans, and Walnut Place

10

demanded that The Bank of New York Mellon sue Countrywide to enforce the terms of the PSA.  In February 2011, after The Bank of New York Mellon did not act, Walnut Place filed a derivative action in state court on behalf of a trust in which it held an interest.

Meanwhile, the negotiations provoked by the Institutional Investors culminated in a "Settlement Agreement" on June 28, 2011, which provided that Countrywide and Bank of America will pay $8.5 billion, to be allocated among all of the trusts in accordance with an agreed-upon formula.  (It also required the mortgage servicer to adopt reforms.)

The Settlement Agreement is contingent on court approval: it is not effective until The Bank of New York Mellon brings an Article 77 proceeding in New York state court and obtains entry of a judgment sanctioning its execution of the Settlement Agreement.  On June 29, 2011, The Bank of New York Mellon filed a verified petition in New York Supreme Court under CPLR § 7701 seeking a judgment, *inter alia*,

(1) that The Bank of New York Mellon "has the authority, pursuant to the Governing Agreements and applicable law" "to assert, abandon, or compromise" claims belonging to the trusts and enter into the Settlement Agreement on behalf of the trusts and trust beneficiaries; and

(2) that it had "acted in good faith, within its discretion, and within the bounds of reasonableness in determining that the Settlement Agreement was in the best interests of the Covered Trusts."

Joint Appendix 165-70.

Article 77 of the New York Civil Practice Law and Rules authorizes a special proceeding "to determine a matter relating to any express trust . . . ." N.Y. C.P.L.R. 7701. Permissible uses of Article 77 are "broadly construed to cover any matter of interest to trustees, beneficiaries or adverse claimants concerning the trust." Greene v. Greene (In re Greene), 451 N.Y.S.2d 741, 743 (1st Dep't 1982). Such proceedings are used by trustees to obtain instruction as to whether a future course of conduct is proper, and by trustees (and beneficiaries) to obtain interpretations of the meaning of trust documents. See Gilbert v. Gilbert (In re Gilbert), 39 N.Y.2d 663, 666 (1976) (interpreting addendum to trust); First Nat'l City Bank v. Palmer (In re Scarborough Props. Corp.), 25 N.Y.2d 553, 559-60 (1969)

12

(approving sale of trust assets to trustee after adversarial hearing to determine fairness); <u>Andrews v. Trustco Bank, Nat'l Ass'n</u> (<u>In re Andrews</u>), 735 N.Y.S.2d 640, 643 (3d Dep't 2001) (interpreting income provision of trust).[3]  Ultimately, however, whether a New York court is able and willing to grant the relief sought in this case is an issue for the New York courts.

Walnut Place moved to intervene in the Article 77 proceeding, chiefly to exclude the three trusts that it invested in from the proposed settlement.  The motion stated that The Bank of New York Mellon had negotiated the Settlement Agreement "in secret," working only with the Institutional Investors, that the Article 77 proceeding was initiated without notice to all certificateholders,[4] and

---

[3] The "matter[s] relating to a trust" that can be resolved in an Article 77 proceeding also include, among other relief, the judicial settlement of a trustee's accounts; an accounting; the modification of a trust; the  compelling of payment to trust beneficiaries; a determination of trust revocation; and the removal of a trustee.  <u>See</u> 14 Jack B. Weinstein, et al., New York Civil Practice: CPLR ¶ 7701.05 (2011).

[4] Notwithstanding these allegations, The Bank of New York Mellon's Article 77 proceeding provided for an expansive program intended to provide notice to all certificateholders, and the Settlement Agreement required

that the parties had conflicts of interest: The Bank of New York Mellon obtained for itself an expanded indemnity, and the Institutional Investors had other business relationships with Bank of America.  On August 19, 2011 the state court granted the motion to intervene.

On August 26, Walnut Place removed the Article 77 proceeding to the United States District Court for the Southern District of New York, on the ground that the Article 77 proceeding was a "mass action" under CAFA, 28 U.S.C. § 1332(d)(11), and therefore removable under 28 U.S.C. §§ 1446 and 1453.  The Bank of New York Mellon and the Institutional Investors moved to remand.  The district court denied the motion.

The Bank of New York Mellon and the Institutional Investors sought permission to bring an appeal pursuant to CAFA's interlocutory appeal provision.  See 28 U.S.C. § 1453(c).  We granted leave to appeal to consider whether the case falls within CAFA's securities exception, whether CAFA's interlocutory appeal provision extends to appeals of

---

that a preliminary order regarding the notice plan be sought in the Article 77 proceeding.

remand orders relating to "mass actions," whether the Article 77 Proceeding was in fact a "mass action," and whether the case was properly removed by a "defendant or defendants" as dictated by 28 U.S.C. § 1446.

We conclude that we lack appellate jurisdiction over this case as one that solely involves a claim that "relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security." 28 U.S.C. § 1453(d)(3). For the same reason, the case was not removable from state court and must be remanded. See 28 U.S.C. § 1332(d)(9)(C). We therefore do not reach any of the other questions raised on appeal.

**DISCUSSION**

CAFA expanded federal jurisdiction to permit a defendant to remove to federal court a class actions or "mass action" notwithstanding the absence of the complete diversity or federal question otherwise required for removal. See 28 U.S.C. §§ 1332(d), 1453(b); Greenwich Fin., 603 F.3d at 26. Such a removal is subject to the general

15

remand statute, 28 U.S.C. § 1447. See 28 U.S.C. § 1453(c)(1). A district court order on a motion to remand is ordinarily unappealable under the collateral order doctrine. See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 488 F.3d 112, 121 (2d Cir. 2007). However, CAFA expanded appellate jurisdiction to allow courts of appeals to accept interlocutory appeals from orders granting or denying motions to remand cases removed under CAFA. See 28 U.S.C. § 1453(c)(1) ("[A] court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed.").

At the same time, Congress carved out exceptions to CAFA's expanded jurisdiction. One of them targets claims that relate to the rights, duties, and obligations relating to securities:

> (d) Exception.—This section shall not apply to any class action that solely involves
>
> . . .
>
>> (3) a claim that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the

16

> Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and
> the regulations issued thereunder).

28 U.S.C. § 1453(d).  This wording appears twice in CAFA, once as an exception to our appellate jurisdiction, id., and once as an exception to the district courts' original jurisdiction, id. § 1332(d)(9)(C).  These provisions work in tandem and are given the same meaning.  See Greenwich Fin., 603 F.3d at 27; S. Rep. No. 109-14, at 49-50 (2005) ("The parameters of [§ 1453(d)] are intended to be conterminous with new subsection 1332(d)(9).").  It follows that if we lack appellate jurisdiction, the district court likewise lacked original jurisdiction.

## I

We have twice before construed the exception to CAFA for an action that solely involves a claim that "relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security".  See Greenwich Fin., 603 F.3d 23; Estate of Pew v. Cardarelli, 527 F.3d 25 (2008).  Although the wording of the exception (like much of CAFA) does not easily give up

17

its meaning, <u>Cardarelli</u>, 527 F.3d at 30, our precedents explain that § 1453(d)(3) carves out from our jurisdiction "claims based either on the 'terms of the instruments that create and define securities or on the duties imposed on persons who administer securities,'" while leaving unaffected federal jurisdiction over "claims based on rights arising from independent sources of state law." <u>Greenwich Fin.</u>, 603 F.3d at 28-29 (alterations omitted) (quoting <u>Cardarelli</u>, 527 F.3d at 33).

By way of example, the plaintiffs in <u>Cardarelli</u> sued solely under a New York consumer fraud statute, N.Y. Gen. Bus. Law § 349, alleging that they had been sold a debt security by officers of the issuer who knew the company was insolvent. <u>Cardarelli</u>, 527 F.3d at 27. Although the purchase was of a security, we held that § 1453(d)(3) was inapplicable because the claim related to plaintiffs' status as the "purchaser" rather than the holder of a security: "The present claim--that a debt security was fraudulently marketed by an insolvent enterprise--does not enforce the rights of the Certificate holders as holders, and therefore

18

it does not fall within § 1332(d)(9)(C) and § 1453(d)(3)." Id. at 32.

The same principle produced the opposite result in Greenwich Financial, which was brought by certificateholders of trusts that were similar in all material respects to those at issue here, down to the originator, trustee, and servicer.  603 F.3d at 24-25.  A class action complaint in New York state court sought a declaratory judgment that Countrywide was required by the governing PSAs to buy back non-conforming mortgages.  Id. at 25.  We concluded that, unlike the plaintiffs in Cardarelli, the plaintiffs sought "enforcement of their rights as *holders* rather than as purchasers of securities":  the "right to force Countrywide Servicing to repurchase the loans arises from the deal instruments themselves, not from an extrinsic provision of state law, such as a consumer fraud statute."  Id. at 29.

**II**

The first step is to determine what claims were asserted in the state court, an inquiry complicated somewhat

19

by the nature of an Article 77 proceeding.  Ultimately, we conclude that The Bank of New York Mellon is seeking a judicial determination [i] that it has the authority to assert and settle claims on behalf of the trusts and [ii] that it "acted in good faith, within its discretion, and within the bounds of reasonableness in determining that the Settlement Agreement was in the best interests of the Covered Trusts."  Joint Appendix at 165-166, 169; Walnut Place Br. at 25 ("[The Bank of New York Mellon] is affirmatively and unambiguously seeking a declaration that it complied with its duties under New York common law."). Thus it asks for a construction of the PSA and an instruction that its planned course of action complies with its obligations under that document and the law of trusts-- consistent with other proceedings brought under Article 77. See Gilbert, 39 N.Y.2d at 666 (providing construction of trust documents); Scarborough, 25 N.Y.2d at 559-60 (approving sale of trust assets to trustee after adversarial proceeding).

We classify the claims by reference to the verified petition filed by The Bank of New York Mellon and its

election to proceed under Article 77. The Bank of New York Mellon's verified petition alleges chiefly its good faith in negotiating, evaluating, and agreeing to the settlement, as well as the fairness of the settlement itself. It sets out the potential claims belonging to the trusts, the demands made by certificateholders, the varying strength of the claims and the obstacles to prevailing on them, concerns about successor liability in enforcing a recovery from Countywide, and the retention of experts to evaluate the settlement.

The proposed order that The Bank of New York Mellon submitted in state court is consistent with the petition, and confirms that the trustee is primarily seeking a construction of the trust documents and an instruction about the reasonableness of its planned course of action--the kinds of relief afforded under Article 77. But it ostensibly recites other relief--relief that, according to Walnut Place's theory, fundamentally alters or expands the scope of The Bank of New York Mellon's claim such that it no longer solely involves a claim relating to a security. Thus the proposed order [i] directs the "parties" to "consummate

21

the Settlement in accordance with its terms and conditions," [ii] enjoins Countrywide and Bank of America from suing The Bank of New York Mellon in connection with the Settlement Agreement, and [iii] enjoins the certificateholders, including Walnut Place, from suing The Bank of New York Mellon in connection with the Settlement Agreement.  This wish list does not alter the nature of the relief sought by the trustee, for several reasons.  As a structural matter, relief would be limited by the purposes and procedural features of Article 77.  As a procedural matter, it is elementary that a court cannot bind a non-party absent special circumstances, and neither Countrywide nor Bank of America is a party to the Article 77 proceeding.  See Briscoe v. City of New Haven, 654 F.3d 200, 203 (2d Cir. 2011) ("The general principle in Anglo-American jurisprudence is 'that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'" (quoting Hansberry v. Lee, 311 U.S. 32, 40 (1940))).  The injunction against certificateholders like Walnut Place simply gives effect to the primary relief

22

sought in the Article 77 proceeding--the determination that The Bank of New York Mellon acted reasonably in entering into the Settlement Agreement and in accordance with its duties as trustee for all certificateholders. Moreover, although we leave these matters for New York courts to decide, there is no basis for an injunction compelling the parties to execute the Settlement Agreement because they have no present disagreement and unanimously seek only the opportunity to consummate it. Likewise, there is no basis for an injunction preventing suit by Bank of America against The Bank of New York Mellon because there is no threat of such litigation.

**III**

Having characterized the claim as a declaration authorizing the exercise of a trustee's powers, we can now determine whether it solely involves a claim that "relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security." 28 U.S.C. § 1453(d)(3). Because The Bank of New

23

York Mellon seeks a construction of its rights under the PSA and an instruction from the court as to whether it has complied with its "duties . . . and obligations" arising from the PSA and its "fiduciary duties" superimposed by state law, we conclude that it does.

Greenwich Financial already held that a suit by security holders attempting to enforce the terms of a PSA fit within § 1453(d)(3).  At that time, Countrywide argued that the plaintiffs' claims did not relate to a security because the terms being enforced were contained in the PSA rather than in the certificate.  We rejected that argument:

> The fact that a certificate holder's rights may be enumerated in an instrument other than the security itself is not material.  Securities are created and defined not simply by their own text, but also by any number of deal instruments executed between various parties. Indeed, we made clear in Cardarelli that the "instruments that create and define securities" include documents such as certificates of incorporation and bond indentures. [Cardarelli, 527 F.3d at 31.]  For this reason, the fact that plaintiffs seek enforcement of a term of the PSAs--trust agreements similar to bond indentures in many respects--rather than of the certificates does not affect our conclusion that this suit is not removable under CAFA.

Greenwich Fin., 603 F.3d at 29.

24

The sole claim presented in the Article 77 proceeding fits within § 1453(d)(3) because it concerns the relationship between the entity which administers the securities, The Bank of New York Mellon, and the certificateholders. In Cardarelli, we drew no distinction between suits that relate to "the terms of instruments that create and define securities," and those that relate to the "duties imposed on persons who administer securities." 527 F.3d at 33. As Walnut Place points out, our previous cases interpreting § 1453(d)(3) have dealt with suits *enforcing* rights, duties, and obligations that relate to or are created by or pursuant to a security; however, the statutory language equally bears upon a *declaration* as to what those rights, duties and obligations may be. Cases that declare them (so that they can be realized) "relate" to them to the same extent as cases that enforce them.

It follows that the district court erred insofar as it reasoned that the securities exception does not apply if "the trustee's conduct in approving the settlement must also be evaluated under some" source of law other than the PSA, "such as New York's common law of trusts." Bank of New York

25

Mellon, 2011 WL 4953907, at *8.  The district court specifically cited the duty to avoid conflicts of interest that (it determined) beset The Bank of New York Mellon.  Id. However, duties superimposed by state law as a result of the relationship created by or underlying the security fall within the plain meaning of the statute, which expressly references "duties (including fiduciary duties)."  We have previously explained that "certain duties and obligations of course 'relate to' securities even though they are not rooted in a corporate document but are instead superimposed by a state's corporation law or common law on the relationships underlying that document."  Cardarelli, 527 F.3d at 31; see also Rubin v. Mercer Ins. Grp., Inc., No. 10-6816 (MLC), 2011 WL 677466, at *4 (D.N.J. Feb. 15, 2011) (remanding breach of fiduciary duty claim brought by shareholders against issuer).

Walnut Place argues that applying this analysis in a suit that is not brought by certificateholders would amount to a bright-line rule that any suit touching on a PSA falls within CAFA's securities exception.  Walnut Place would thus recast the removed proceeding (which concerns a trustee's

26

rights, duties, and obligations) into the underlying claim resolved in the Settlement Agreement: a claim by The Bank of New York Mellon against Countrywide and Bank of America to enforce the buy-back provisions of the PSA. That is not the claim that was removed here, and we need not reach the question of whether such a suit would be removable under CAFA.[5]

**III**

Walnut Place argued in opposition to Appellants' petitions for permission to appeal that if we should find that this case fits within § 1453(d)(3)--as we do--we lack

---

[5] Far from requiring a bright-line rule, we recognize that these questions must be resolved on a case-by-case basis. The question, for example, of whether and how an instrument can be disaggregated into a "security" portion and into a non-security "contract" portion is vexed. Compare Lincoln Nat. Life Ins. Co. v. Bezich, 610 F.3d 448, 450-51 (7th Cir. 2010) (holding claim brought under terms of variable life insurance policy, but not implicating the investment account that was registered security, falls within CAFA § 1453(d)(3)), with Ring v. AXA Fin., Inc., 483 F.3d 95, 101 (2d Cir. 2007) (holding that rider purchased for and incorporated into variable life insurance policy was not a "covered security" for purposes of the Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353, 112 Stat. 3227 (1998)).

27

jurisdiction to direct the district court to remand the case. There is no doubt, however, that where the federal courts no longer have jurisdiction over a case, courts of appeal retain the authority to properly dispose of it. See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 21 (1994) ("[R]eason and authority refute the . . . notion that a federal appellate court may not take any action with regard to a piece of litigation once it has been determined that the requirements of Article III no longer are (or indeed never were) met."); Duke Power Co. v. Greenwood Cnty., 299 U.S. 259 (1936). There is explicit statutory authority for such orders:

> The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

28 U.S.C. § 2106; see also In re Wallace & Gale Co., 72 F.3d 21, 25 (4th Cir. 1995) ("When we conclude, as we do here, that we lack jurisdiction to reach the merits of an appeal, we are not without power to act. We retain the power under

28 U.S.C. § 2106 to dismiss the appeal and remand the cause with instructions." (citation omitted)).  We therefore have authority to reverse the order of the district court and instruct it to vacate its decision and order and remand the case to state court.

## CONCLUSION

For the foregoing reasons, we dismiss the appeal for lack of jurisdiction, reverse the order of the district court, and instruct it to vacate its decision and order and remand the matter to New York Supreme Court.