**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EMINENCE INVESTORS, L.L.L.P., an
Arkansas Limited Liability Limited
Partnership, Individually, and on
behalf of all others similarly
situated,

No. 15-15237

D.C. No.
1:13-cv-02025-
AWI-MJS

*Plaintiff-Appellee*,

v.

OPINION

BANK OF NEW YORK MELLON, a
New York Banking Corporation,
*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, Senior District Judge, Presiding

Argued and Submitted
March 9, 2015—San Francisco, California

Filed April 2, 2015

Before: J. Clifford Wallace, Milan D. Smith, Jr.,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Wallace

## SUMMARY[*]

### Class Action Fairness Act / Removal / Jurisdiction

The panel dismissed for lack of subject matter jurisdiction an appeal from the district court's order remanding the case to state court after the defendant had removed the case to federal court pursuant to the Class Action Fairness Act.

The panel held that the securities exception from CAFA removal, 28 U.S.C. § 1453(d)(3), applied to the case, and dismissed for lack of jurisdiction.

## COUNSEL

David J. Bird (argued), James C. Martin, Eric A. Schaffer, and Benjamin J. Sitter, Reed Smith LLP, Pittsburgh, Pennsylvania; Donald H. Glasrud, Dietrich, Glasrud, Mallek & Aune, Fresno, California, for Defendant-Appellant.

Robert Branch (argued), Thornton Law Group, P.C., Fresno, California; Douglas V. Thornton, Rummonds Thornton, LLP, Fresno, California, for Plaintiff-Appellee.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

WALLACE, Senior Circuit Judge:

Defendant-Appellant The Bank of New York Mellon (Bank) appeals from the district court order remanding this case to state court after the Bank removed the case pursuant to the Class Action Fairness Act (CAFA) removal provision in 28 U.S.C. § 1453(b). Because we conclude that the CAFA securities exception, 28 U.S.C. § 1453(d)(3), applies to this case, we dismiss the appeal for lack of jurisdiction.

## I.

Plaintiff-Appellant Eminence Investors, L.L.L.P. (Eminence), originally brought suit against the Bank in California state court in 2011. Almost two years later, Eminence filed a First Amended Complaint (Complaint), adding class allegations on behalf of more than 100 class members and requesting compensatory damages expected to exceed $10 million for each of four causes of action. The Bank is the successor to the indenture trustee under an Indenture of Trust (Indenture) dated November 1, 1996, governing the administration of the $16,000,000 Jensen Ranch Public Financing Authority River Ranch Project – Revenue Bonds, 1996 Series A (Bonds) issued by the Jensen Ranch Public Finance Authority. The Complaint alleges that Eminence and other class members have a common interest as holders of the Bonds against the Bank as their fiduciary. The Complaint includes causes of action for breach of fiduciary duty and gross negligence as well as a request for injunctive relief.

Within thirty days of the filing of the Complaint, the Bank removed the action to federal court. Eminence then moved to remand the case to state court, arguing that removal was untimely and that the CAFA securities exception applied. The district court ultimately agreed with Eminence regarding the untimeliness of the removal under 28 U.S.C. § 1446(b) and remanded the case to state court without reaching the securities exception issue.

## II.

Normally, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal." 28 U.S.C. § 1447(d). However, in cases that fall under CAFA, "a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed." *Id.* § 1453(c)(1). The Bank relied exclusively on CAFA jurisdiction when removing the case and no other source of jurisdiction is apparent from the record. Any jurisdiction over this appeal is therefore predicated on the applicability of CAFA. We do not have jurisdiction if the CAFA securities exception applies to this case.

The Bank argues that Eminence waived the securities exception argument by omitting it from its opposition to the petition for permission to appeal. Regardless of whether Eminence has waived the argument, however, this court is "bound to consider jurisdictional defects sua sponte." *United States v. S. Pac. Transp. Co.*, 543 F.2d 676, 682 (9th Cir. 1976).

## III.

Three categories of cases are expressly exempted from CAFA removal. 28 U.S.C. § 1453(d). Virtually identical language is used in 28 U.S.C. § 1332(d)(9) to describe the cases excluded from original jurisdiction under CAFA. The third removal exception, which for the sake of simplicity we refer to as the "securities exception," *see Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 29 (2d Cir. 2010), is the only one relevant to this appeal. We have not yet had occasion to construe the language of the securities exception.

Under this exception, CAFA removal does not apply to

> any class action that solely involves ... a claim that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and the regulations issued thereunder).

28 U.S.C. § 1453(d)(3). Thus, the securities exception applies if all of the claims in the class action have a particular kind of relationship with a security. Each claim must relate to certain rights, duties, or obligations; those rights, duties, or obligations must be related to or created by or pursuant to a security; and that security must meet the definition established in 15 U.S.C. § 77b(a)(1) "and the regulations issued thereunder."

Neither party disputes that the Bonds fit within the relevant definition of "security" under the last part of the

exception. Nor does either party dispute that the issuance of the Bonds gave rise to rights, duties, and obligations between the holders of the Bonds, the borrower, and the indenture trustee. The disputed issue is whether all of the claims in the Complaint "relate[] to the rights, duties ..., and obligations relating to or created by or pursuant to" the Bonds.

Eminence's Complaint asserts five causes of action against the Bank. The first three causes of action are for breach of fiduciary duty, based respectively on non-disclosure, loyalty, and due care. All three allege that "[b]y reason of the Indenture, the [Bank], as fiduciary and agent for [Eminence], ... owed fiduciary duties to [Eminence]," and that the Bank "set out to create and did in fact create a special relationship of trust and confidence, and thereby owed [Eminence] a fiduciary duty." These causes of action allege that the Bank breached its duties in various ways: by failing to disclose certain information to Eminence; by taking certain actions that "harmed the collateral for the Deed of Trust and ultimate security for the Note," including selling other properties for less than market value and without guaranteeing access rights; and by taking similar actions including failing to record the Indenture in a timely manner. The third cause specifically alleges that the Bank "further owed professional duties under applicable state and federal laws, industry standards, and professional codes of ethics."

The fourth cause of action is for gross negligence, and the allegations closely follow the allegations made in the third cause of action, including allegations that the Bank was under a duty to perform its work with due care and that the Bank owed further professional duties. The fifth cause of action is entitled "injunctive relief"; it appears to be a request for a

temporary restraining order or preliminary injunction, rather than an independent cause for relief.

The duties the Bank allegedly owed to Eminence all stem from the current relationship between the Bank and Eminence based on their positions with respect to the Bonds. Although neither the Bank nor Eminence were parties to the original transaction, the Bank is now the successor to the indenture trustee, and Eminence holds some of the Bonds. All of the duties allegedly breached by the Bank, such as the fiduciary duties supporting the first three causes of action and the duties supporting the gross negligence cause of action, arise out of the Bank's position as indenture trustee and Eminence's corresponding position as holder of the Bonds.

Although it is true that Eminence's causes of action also rely on various sources of law—including the state and federal laws, industry standards, and professional codes of ethics mentioned in the Complaint—that are not part of the Bonds themselves or the Indenture governing their administration, the same would also be true of *any* cause of action that relates to the duties created by a security, because the cause would at least rely on those provisions of contract law necessary to construe and apply the security. The causes of action stated in the Complaint are based on alleged duties, and those alleged duties arise from the Bonds and the Indenture. In fact, Eminence conceded at oral argument that if the Indenture did not exist, Eminence would have no cause of action against the Bank. Thus, we conclude that under any plausible interpretation of the statutory language, all of the causes of action in the Complaint "relate[] to the rights, duties ..., and obligations relating to or created by or pursuant to" the Bonds, so the securities exception must apply.

The Bank argues that the securities exception should not apply because some of the allegations underlying the causes of action involve the transfer of the "District Property," which was completely unrelated to the Bonds or the original transaction that created the Bonds. However, the Complaint makes clear that the District Property transaction is relevant to Eminence's causes of action because the Bank "breached [its] fiduciary duties by ... authorizing the sale of the District Lands to a private party to the financial detriment of the Development Property." Thus, the District Property allegations are only relevant to Eminence's causes of action against the Bank because the Bank allegedly owed Eminence and other bondholders certain fiduciary duties in its role as trustee under the Indenture. These allegations are therefore part of "a claim that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to" the Bonds held by Eminence.

The Bank also argues that the securities exception should not apply because several specific allegations in the complaint against the Bank are expressly foreclosed by the terms of the Indenture. But the Bank's ability to invoke the terms of the Indenture as a defense is logically dependent upon the degree to which those causes of action are based on the relationship created by the issuance of the Bonds. The Bank may be right that the terms of the Indenture preclude any liability for the Bank under the theories set forth in Eminence's causes of action, but the assumptions underlying that argument lead inexorably to the conclusion that the causes of action at least "relate[] to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to" the Bonds.

**IV.**

Although we have not yet construed the language of the securities exception, the Second Circuit has done so previously in three of its cases: *BlackRock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assurance Corp.*, 673 F.3d 169 (2d Cir. 2012); *Greenwich*, 603 F.3d 23; and *Estate of Pew v. Cardarelli*, 527 F.3d 25 (2d Cir. 2008). The reasoning followed by the Second Circuit in its securities exception cases confirms the conclusion we reached above.

In addition, we have stated that we prefer not to create intercircuit conflicts unless we conclude it is absolutely necessary. *See Envtl. Prot. Info. Ctr., Inc. v. Pac. Lumber Co.*, 257 F.3d 1071, 1077 (9th Cir. 2001) ("unless there are valid and persuasive reasons to hold otherwise, we should not create an intercircuit conflict"); *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1374 (9th Cir. 1987) (same). The application of this wisdom is especially important here because the controversy deals with securities, which by their nature have no state boundary impediments. Further, the legislative history as well as the logic behind CAFA dictate that a nationwide rule is of great significance. We therefore join our sister circuit on the issue before us.

In *Cardarelli*, purchasers of certain money market certificates brought suit against the issuers of the certificates and their auditors under a state consumer fraud statute. 527 F.3d at 26. The Second Circuit held that because the plaintiffs sought to enforce their rights as purchasers of the securities rather than as holders of the securities under a state fraud statute that focused on the transaction in which they acquired the notes, the exception did not apply. *Id.* at 32.

The Bank quotes *Cardarelli* for the proposition that in order to apply the securities exception the causes involved must be causes "grounded in the terms of the security itself." However, the next sentence in *Cardarelli* clarifies that the key distinction was whether the plaintiffs were seeking to enforce their rights as holders of the certificates or purchasers of the certificates, *id.*, and subsequent Second Circuit cases reinforce this interpretation of *Cardarelli*. *See BlackRock*, 673 F.3d at 176 (in *Cardarelli* "we held that § 1453(d)(3) was inapplicable because the claim related to plaintiffs' status as the 'purchaser' rather than the holder of a security"); *Greenwich*, 603 F.3d at 29 ("The key distinction between suits that were immune from removal under CAFA and those that were not [in *Cardarelli*] is that immune suits sought to enforce the rights of the securities 'holders as holders'").

In this case, Eminence is clearly asserting its rights as a holder of the Bonds rather than as a purchaser of the Bonds. Neither Eminence nor the Bank were involved in the original transaction that gave rise to the Bonds. Eminence acquired the Bonds by repurchasing them from their original holders in subsequent years, and the Bank later became the successor in interest to the original trustee. Thus, *Cardarelli* cannot be construed to suggest that the securities exception is inapplicable in this case.

The Second Circuit's later opinion in *Greenwich* involved a suit brought by the holders of mortgage-backed securities against the mortgage company and the trusts it created to generate and sell the securities; the plaintiffs sued to force the defendants to repurchase the securities under the agreements governing the securities. 603 F.3d at 25. The Second Circuit held that the securities exception applied because the "[p]laintiffs' asserted right to force [the defendant] to

repurchase the loans arises from the deal instruments themselves, not from an extrinsic provision of state law, such as the consumer fraud statute that formed the basis of the action in *Cardarelli*." *Id.* at 29. The Second Circuit also rejected the defendants' arguments that the securities exception could not apply because the plaintiffs' claims raised "collateral legal issues that go beyond the interpretation of the certificates," including state alter ego law and a defense based on "'standard industry practice,' as defined in federal law at 15 U.S.C. § 1639a(c)." *Id.* at 31. The Second Circuit reasoned that "[a]lmost any securities claim under state law will necessarily 'involve' defenses—such as statutes of limitations—and collateral issues—such as state contract law," and the court had to "reject an interpretation of the statutory text that would render the jurisdictional exception of ... [section] 1453(d)(3) nugatory." *Id.*

The Bank does not cite *Greenwich*, perhaps unsurprisingly given that the Second Circuit's reasoning in *Greenwich* directly addresses and dispatches the arguments raised by the Bank in this case. The Bank argues that the securities exception should not apply both because Eminence's causes of action raise collateral issues of state law such as the common law duties (if any) of an indenture trustee and because Eminence's causes are subject to a variety of defenses under the terms of the contract. As the Second Circuit stated, such a broad interpretation of the securities exception would render the exception null, since "[n]othing differentiates [such arguments] from the sorts of affirmative defenses and collateral issues that arise in virtually every lawsuit," and "Congress cannot have intended its exceptions to CAFA jurisdiction to be essentially meaningless." *Id.* at 31–32.

In the Second Circuit's most recent securities exception case, *BlackRock*, the Bank of New York Mellon (the same party in this case), acting in its capacity as a trustee over trusts holding mortgage-backed securities, initiated a state-court proceeding to confirm its settlement authority, at which point certain investors removed the proceeding to federal court pursuant to CAFA. 673 F.3d at 172. The district court held that the securities exception did not apply "if the trustee's conduct in approving the settlement must also be evaluated under some source of law other than the [documents underlying the securities], such as New York's common law of trusts." *Id.* at 179 (internal quotation marks omitted). But the Second Circuit dismissed the appeal, holding that "duties superimposed by state law as a result of the relationship created by or underlying the security fall within the plain meaning of the statute, which expressly references 'duties (including fiduciary duties).'" *Id.*, quoting 28 U.S.C. § 1453(d)(3).

The reasoning in *Blackrock* likewise confirms the propriety of applying the securities exception in this case, since it is clear here that Eminence's causes of action are based on the "duties superimposed by state law as a result of the relationship created by or underlying the [Bonds]." To hold that the securities exception does not apply to such causes of action would run counter to the statute's text, which expressly includes causes of action based on "fiduciary duties." The Bank appears to cite *Blackrock* for the principle that the securities exception should not apply to causes of action "seeking solely to 'enforce the terms of' the Indenture," quoting a passage from *Blackrock* stating that the exception should not apply to "claims based on rights arising from independent sources of state law," *id.* at 176 (internal quotation marks omitted). However, the Bank does not

discuss the preceding phrase, which states that the securities exception *does* apply to causes based "on the duties imposed on persons who administer securities." *Id.* An indenture trustee is the one responsible for administering bonds, so under the reasoning of this passage in *Blackrock*, the securities exception should apply because all of Eminence's causes of action are based on the Bank's alleged duties in administering the Bonds.

The Second Circuit's reasoning regarding CAFA's securities exception therefore does not conflict with our conclusion above that the exception clearly applies to the causes of action in this case. Regardless of whether we would have taken the Second Circuit's approach to the specific and sometimes difficult issues that it has addressed in its securities exception cases, it is clear that the underlying causes of action in this case are covered by the CAFA securities exception under any plausible reading of the text.

**APPEAL DISMISSED.**